KEELER and another, Respondents, vs. JACOBS, Appellant.

*April 10 — May 1, 1894.*

(1) *Sale of machine on trial: Return: Reasonable time: Court and jury.*
(2, 3) *New trial: Newly discovered evidence, when cumulative.*

1. In an action for the price of a grubbing machine sold by plaintiffs to defendant on trial April 11, and not returned before the latter part of May, it was error to take the question of reasonable time from the jury by instructing them that that length of time was unreasonable unless plaintiff had some excuse for keeping the machine up to that time by reason of assurances that a certain defect would be remedied.

2. Upon a motion for a new trial, newly discovered evidence relating to distinct and independent facts of a character different from those of which there was evidence on the trial, though tending to establish the same ground of claim or defense, will not be considered merely cumulative.

3. A remark in *Goldsworthy v. Linden*, 75 Wis. 24, to the effect that, for the purposes of the motion, the newly discovered evidence must be regarded as true, is criticised as too broad a statement.

APPEAL from the Circuit Court for *Grant* County.

The plaintiffs sued to recover $75, the price of a "Little Giant Grubber" they claimed to have sold to the defendant, and the answer was a general denial.

At the trial before a jury, evidence was given on behalf of the plaintiffs of the delivery of the machine to defendant, April 11, 1892, and tending to show that the defendant was to give it a fair trial and if it did not do good work he could return it; that in the following June defendant told one of the plaintiffs he was well satisfied with it. They wrote defendant, July 30, 1892: "We understand you said you would not take the machine any more, as you had got through with it, claiming that the rope was rusty, etc. If you do not care for the machine, you will at least settle for the use of the same, which you cannot well deny. If convenient to you, please come in when in town, and we will try and settle in some way satisfactory to both of us." They had written to the firm of whom they got the machine, asking them if they would send a new cable in place of the one defendant had; that if sent they could get a settlement out of him that way. Evidence was given tending to show that the machine did good work, and that the defendant said he had taken it on trial.

On the part of the defendant, evidence was given to the effect that the plaintiffs let him have the machine on trial until satisfied with it, and if not satisfied with it he might return it; that the cable proved rusty, defective, and unsatisfactory, and some of the strands were breaking, and

some had broken; that he told one of the plaintiffs within two or three days that it seemed to work all right, but the cable was breaking and would give out, and that he would not want the machine with that cable; that he asked if he should bring it back, or if he would get a new rope; that if he would get a new rope he would keep it, otherwise not; that the plaintiff *Keeler* told him to keep it there, and he would write to the company and see what they would say; that about ten days thereafter *Keeler* then informed him that the company would not furnish a new rope, and he told *Keeler* he did not want the machine, and that he did not use it afterwards.   One Palmer testified that he used the machine in moving a house, and it was left across the street by him from plaintiffs' place of business about the 27th of May, and defendant told him not to take it back unless he had orders; but the defendant denied this, and there was a conflict of evidence whether he authorized Palmer to use it at all.   The defendant's son testified that *Keeler* told him, soon after the 4th of July, in a conversation about the machine and the failure to get a new cable, and when it had been left by Palmer at Bagley, the plaintiffs' place of business, to tell his father, if he would take the machine, he would throw off $5 from the price; and this was not controverted, though much of the plaintiffs' testimony was disputed by the plaintiff *Keeler*.

The court charged the jury, among other things, that the defendant was entitled to a reasonable time to try the machine, and if he did not wish to keep it he must return it within a reasonable time; that what was a reasonable time was a question for the jury in each case, depending, as it must, on various circumstances; that whether under all the circumstances, the defendant acted reasonably is more a question for the jury upon the facts than a question of law in any sense.   " Most assuredly, unless he had the right to keep that machine until the latter part of May because the

plaintiffs told him. he might expect a new cable, the time would be too long. It would be an unreasonable length of time unless he had some excuse for keeping the machine up to that time by reason of assurances given to him that a certain defect would be remedied. It is for you to say, under all the circumstances of this case, whether there was an acceptance of the machine by the defendant, or whether he unreasonably delayed returning it or notifying the plaintiffs that he would return it."

After a verdict for the plaintiffs, the defendant moved for a new trial on the ground of the newly discovered evidence of one Wilson, and the material question in respect to it was whether the newly discovered evidence was merely cumulative. Wilson's affidavit was that: " On or about the 6th of July, 1892, after the machine in question had been returned from defendant's farm to Bagley, he was in the plaintiffs' store at that place, and asked *Day*, one of the plaintiffs, if he had a grubbing machine for sale. Said *Day* replied: 'Yes, we have a grubber for sale. It is one that *Leroy Jacobs* had, which he has returned. Do you want to buy a grubber?' To this deponent replied: 'Yes, .I think of buying one.' Thereupon said *Day* said to deponent: 'The machine is near the hotel; go and look at it.' To this the deponent replied: 'Won't you go with me?' Said *Day* replied to this deponent: 'No, I am alone in the store and can't go now. Go down and look at it, and see what you think of it.' That deponent went to the place indicated, and found said grubber, and the rope was badly rusted and in very bad condition." The court denied the motion.

The defendant appeals from a judgment on the verdict in favor of the plaintiffs.

For the appellant there was a brief by *Thomas & Fuller*, and oral argument by *C. S. Fuller*.

. *D. Webster* and *J. D. Wilson*, for the respondents, con-

tended, *inter alia*, that the language of the court excepted
to will stand the test of the rule laid down in *Gammon v.
Abrams*, 53 Wis. 323; *Paige v. McMillan*, 41 id. 337; *First
Nat. Bank v. Larsen*, 60 id. 217; *Adams v. McKay*, 63 id.
404. The newly discovered evidence is simply cumulative.
*Ketchum v. Breed*, 66 Wis. 98, 99; *Gans v. Harmison*, 44
id. 326, 327; *Grace v. McArthur*, 76 id. 651.

PINNEY, J. 1. The material question under the evidence
was whether the defendant, within a reasonable time, re-
turned the machine or notified the plaintiffs that he would
not keep it. Unreasonable delay would operate as an accept-
ance of it. What was a reasonable time for a trial of it
was a question of fact for the jury (Benj. Sales, §§ 596,
597), and such the circuit court seems to have understood
to be the law. Although the jury were told that it was
for them " to say, under all the circumstances of the case,
whether there was an acceptance of the machine by the
defendant, or whether he unreasonably delayed returning
it or notifying the plaintiffs that he would return it," yet
the court had already instructed the jury that " most as-
suredly, unless he had the right to keep that machine until
the latter part of May because the plaintiffs told him he
might expect a new cable, *the time would be too long*," and
that the length of time would be unreasonable unless he
had some excuse for keeping the machine up to that time
by reason of assurances that a certain defect would be
remedied. The instruction quoted was erroneous, because
it withdrew from the consideration of the jury a question
which was peculiarly within their province, and particu-
larly so in this case, and, so far as it left anything to the
jury upon the question of reasonable time, it did so in sub-
jection to the binding force of this absolute instruction.
It was misleading, for the reason that the failure to get a
new cable appears to have occurred in the early part of

May, and there was testimony on the part of the defend-
ant that he had already notified the plaintiffs that he did
not want the machine, and that he had previously notified
them that if he got a new rope he would keep it, otherwise
not; and that the plaintiff *Keeler* told him to keep it there,
and he would write to the company. It is true that this
was controverted by the plaintiffs. There was the use of
the machine by Palmer, and its deposit soon after near the
plaintiffs' place of business, of which it seems they had no-
tice, and there was the subsequent message sent to the de-
fendant by his son, about July 4th, that if his father would
take the machine they would throw off $5, and this was
followed by the letter from the plaintiffs to the defend-
ant of July 30th, from the tenor of which it seems that
the plaintiffs had not understood that the defendant had
certainly accepted the machine, for they seem to have as-
serted a claim for pay for its use. The effect of the in-
struction was practically to withdraw all this evidence from
the jury, by holding, in substance, that the machine had
been accepted by the defendant by the latter part of May,
unless the plaintiffs "told him he might expect a new cable,
or assurances were given him that the defect complained
of would be remedied." There is no claim that any such
promise was made or assurance was given. The most that
occurred was that the plaintiffs were to write and see what
the company would do about it. The case should have
been submitted to the jury upon the entire evidence, in-
cluding the conduct and acts of the parties, to say whether
the defendant had accepted the machine, and whether,
under all the circumstances, there had been, within a rea-
sonable time, a refusal to accept it and a substantial return
of the machine.

2. The motion for a new trial, on the ground of newly
discovered evidence, ought to have been granted. We
must assume, so far as the record shows, that the witness

Wilson, who swears in his affidavit to the newly discovered facts, is a credible witness, and if so, in view of the testimony before us, it appears to us that the newly discovered evidence is highly important, and would probably produce a different result on a new trial. The objection that the newly discovered evidence is cumulative is not well taken. Evidence is cumulative which speaks of facts in relation to which there was evidence at the trial, or additional evidence of the same kind to the same point. If, as here, it relates to distinct and independent facts of a different character, though tending to establish the same ground of claim or defense, it is not considered cumulative, within the rule. Hilliard, New Trials, 501, 502; 1 Graham & W. New Trials, 490, 493; *Wilson v. Plank*, 41 Wis. 98, 99; *Finch v. Phillips*, 41 Wis. 393, 394; *Goldsworthy v. Linden*, 75 Wis. 24; *Bigelow v. Sickles*, 75 Wis. 430. In *Goldsworthy v. Linden, supra*, the remark to the effect that, for the purposes of the motion, such newly discovered evidence must be regarded as true, is, we think, stated too broadly. Certainly, as there stated, the facts cannot be determined upon affidavits, yet counter affidavits may be used to show whether the granting of a new trial on the ground of alleged newly discovered evidence would probably produce a different result upon another trial and be promotive of the ends of justice.

For the reasons stated, the judgment of the circuit court must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the case is remanded for a new trial.