IRON CITY NATIONAL BANK OF LLANO v. FIFTH NATIONAL BANK OF
SAN ANTONIO.

Decided January 28, 1903.

**Estoppel—Banks—Authority of Cashier—Misapplication of Deposit.**

Where the insolvent cashier of plaintiff bank instructed defendant bank to
apply plaintiff's deposit to the payment of a loan to such cashier, and this was
done, without notice of want of authority, and at the end of a month defend-
ant sent to plaintiff a statement of account showing the transaction, which was
seen by plaintiff's book-keeper and by one of its directors, a failure to give no-
tice of a want of authority in the cashier within a reasonable time and until,
more than six months thereafter, the cashier was discharged and had subse-
quently become a fugitive from justice, whereby defendant was deprived of his
testimony and the opportunity by legal proceedings or moral suasion to pro-
tect itself, operated to estop plaintiff to deny such cashier's authority to have
the deposit so applied. Following opinion of Supreme Court on a former ap-
peal, 92 Texas, 436.

Appeal from the District Court of Bexar. Tried below before Hon.
J. L. Camp.

*Charles L. Lauderdale,* for appellant.

*Shook & Vanderhoeven* and *Newton & Ward,* for appellee.

FLY, ASSOCIATE JUSTICE.—This suit was instituted by the appellant
to recover of appellee the sum of $5018.65 alleged to have been unlaw-
fully appropriated by appellee. A trial by jury resulted in a verdict
and judgment for appellee. This is the second appeal of the case. 47
S. W. Rep., 533.

The facts are substantially as follows: Some time early in May, 1894,
W. O. Richardson borrowed $10,000 from appellee, giving it one note
for $7000 and another for $3000, and depositing with it seventy shares
of the capital stock of appellant as collateral. At or about the time he
was negotiating for the loan of the money, Richardson was elected ap-
pellant's cashier, and immediately began to deposit funds belonging to
appellant with appellee. On May 11, 1894, Richardson as cashier wrote
to the cashier of appellee to charge the account of appellant with the two
notes given by him. The amount of appellant's deposits were not suffi-
cient at that time, however, to pay off both notes, but soon afterwards
Richardson had $5000 sent from the Hanover National Bank of New
York which was credited on the larger note, and the deposits in the sum
of $5018.65 were applied to the payment of balance remaining due on
the two notes. The notes were marked "paid," and with the collateral
were returned to Richardson. Other deposits were afterwards made by
appellant with appellee, but were soon drawn out. Notice that the de-
posits had been applied on the notes was given by appellee, by letter, to
W. O. Richardson, cashier, and at the end of May, 1894, a statement was
sent to appellant showing that the $5018.65 had been credited on notes.
A statement for June was also sent to appellant, and both the statements

were afterwards found in the proper place in the bank vault, with the "O. K." of appellant's bookkeeper written thereon. The statements were also seen by a director of appellant. To cover up the misappropriation of the $5000, Richardson falsified appellant's books so as to make them show that the sum of $5000 had been sent by the San Antonio bank to a bank in Kansas City and put to the credit of appellant. Richardson at no time after he obtained the loan had any property but the bank shares, and they were utterly valueless. Appellant knew, or could have known by the least diligence, that Richardson had applied its money to the payment of his debts. In December, 1894, Richardson was discharged from the position of cashier, and some months afterwards was indicted for embezzlement, gave bond, and then absconded. In 1896, about two years after the misappropriation of the money by Richardson, and after he had become a fugitive from justice, this suit was instituted. Appellee did not know that Richardson was without authority to apply the money of appellant as he did, but acted in good faith throughout the whole transaction. Appellant knew months before Richardson was indicted that the money had been misappropriated, but never at any time gave notice to appellee of such misappropriation until this suit was instituted.

It was alleged in a supplemental petition that appellee, through its cashier Engelke, made the loan to Richardson, with the stipulation that the latter would be elected cashier for appellant, and should cause moneys belonging to it to be deposited with appellee as security for the loan to Richardson, and that he should misapply and appropriate a sufficient amount of appellant's money to repay the said loan. Following up the allegation of conspiracy, appellant asked the following special charge: "If the deposit account of the plaintiff was begun or agreed to be made, on the part of W. O. Richardson, and was accepted on the part of any officer or officers of the defendant, with the intention or understanding on the part of said Richardson and any officer or officers of the defendant, that such deposit or deposits or any part thereof should be used and applied to pay or satisfy the loan made or to be made by the defendant to said Richardson, or any part of said loan, or in any way to secure the payment of said loan or any part of it, then you, the jury in this case, must return a verdict in favor of the plaintiff." The refusal to give the charge is made the subject of the second assignment of error. There was not a particle of testimony tending to prove any such understanding as that mentioned in the charge, and it was therefore properly refused.

Not only was there no proof that appellee had no knowledge of the want of authority in Richardson to make the disposition that he did of the bank's funds, but there was direct and positive evidence that the officers of appellee knew nothing of Richardson's misappropriation of the money, and fully believed that he had authority to do what he did. Therefore it was not error for the court to fail to condition estoppel as to appellant on the fact of ignorance on the part of appellee as to Richardson's authority to apply the funds of appellant as he did. Under

the facts the court might have instructed the jury that appellee was ignorant of Richardson's lack of authority.

The court instructed the jury that when a statement of its account was sent by the San Antonio bank to the Llano bank, it was the duty of the officers of the latter to examine the statement within a reasonable time, and to notify the San Antonio bank if the authority of Richardson was questioned, and a failure to examine the statement or a failure to notify the San Antonio bank of Richardson's lack of authority, would preclude a recovery on the part of the appellant, if appellee sustained any pecuniary injury by such failure. In the fifth assignment of error complaint is made of that charge, because there was no evidence tending to show that it was the duty of anyone to examine the statement, except the man whose desire it was to conceal the statement from the bank. There was testimony to the effect that the bookkeeper and at least one director examined the statement, and the latter questioned Richardson in regard to the items, and swore that he was not satisfied with the answers given. It was shown to be the duty of the bookkeeper and teller to examine such statements. Under the same state of facts in this case the Supreme Court held that it was the duty of appellant to examine the statement within a reasonable time and give notice to appellee of the want of authority in Richardson. 92 Texas, 436.

When this case was before this court on a former appeal, it was held that there was no evidence that tended to show that the San Antonio bank was injured by a failure to give notice. 92 Texas, 436, 49 S. W. Rep., 368. The Supreme Court concluded that the finding that there was no such evidence raised a question of law upon which they disagreed with this court. That court enumerated the following grounds upon which it was held injury to the San Antonio bank might be predicated by a jury: "Had the notice been promptly given when the statement was received, the San Antonio bank might have been able (1) to show by Richardson, who continued months thereafter to be such cashier, that he in fact had such authority, whereas it is now compelled after a lapse of two years to submit to the testimony of the other officers of Llano bank (117 U. S., 96); (2) to have, by legal proceedings, or moral suasion, in some measure protected itself against loss."

The reasons given by the Supreme Court expand the basis upon which prejudice to the party pleading estoppel may be predicated to an extent that almost eliminates it as one of the necessary elements of that defense, for it would seem that nothing could be more insubstantial than the privilege of having the testimony of a criminal with which to confront honest men, or the satisfaction of using "moral suasion" or a prosecution against him, or even the pleasure of issuing a writ of garnishment in a case where the defendant is insolvent, owning no property and owing large sums of money and no one owing him anything. The proof established that Richardson had nothing but some bank shares which were utterly worthless.

The Supreme Court of Texas has very eminent authority for the posi-

tion assumed by it, howeved, for in the case of Bank v. Morgan, 117 U. S., 96, the same doctrine is vigorously announced. In that case Morgan's employe had raised checks drawn by his employer, which had been presented to the bank and paid by it. At the end of the month in the pass book of the employer the amount of the checks were entered and a balance struck. Accompanying the pass book were the raised checks, which were immediately destroyed by the dishonest employe. Several months elapsed before the employer discovered the forgeries, and the employe had then absconded. The employe had no property. The court said: "Still further, if the depositor was guilty of negligence in not discovering and giving notice of the fraud of his clerk, then the bank was thereby prejudiced, because it was prevented from taking steps, by the arrest of the criminal, or by an attachment of his property, or other form of restitution. It is not necessary that it should be made to appear, by evidence, that benefit would certainly have accrued to the bank from an attempt to secure payment from the criminal. Whether the depositor is to be held as having ratified what his clerk did, or to have adopted the checks paid by the bank and charged to him, can not be made, in this action, to depend upon a calculation whether the criminal had at the time the forgeries were committed, or subsequently, property sufficient to meet the demands of the bank."

If deprivation of the privilege of obtaining the testimony of a man who had robbed an institution that had employed and trusted him, or losing the satisfaction of using "moral suasion" with an insolvent defaulter, or prosecution of a criminal, can be considered in prejudice of the rights and privileges of the San Antonio bank, then it has suffered injury and a case of estoppel has been established by the facts. We have been able, however, to arrive at this conclusion only by reason of the opinion of the Supreme Court delivered under the same facts found in this record.

It is urged by appellant that appellee did ascertain the fact of the misappropriation of the funds when the indictment was returned, and that the same means could have been used to collect the debt from Richardson then as could have been used one year before. At the time of the return of the indictment, however, Richardson had been deprived of his place as cashier, and some of the means for compelling a collection, named by the Texas Supreme Court, would not have been practicable, such as an appeal to his pride, or fear of exposure or prosecution. The same facts now in the record were before the Supreme Court on the former appeal, and their opinion is a full answer to all objections as to insufficiency of the evidence.

None of the assignments is well taken, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.