## VAN DYKE v. OGDEN SAVINGS BANK.

No. 2924. Decided, September 11, 1916. Rehearing denied November 23, 1916 (161 Pac. 50).

1. NEW TRIAL—NEWLY DISCOVERED EVIDENCE—CUMULATIVE EVIDENCE. New trial may be granted for newly discovered cumulative evidence which renders clear and positive that which was before indefinite and uncertain. (Page 612.)

2. NEW TRIAL—NEWLY DISCOVERED EVIDENCE—CUMULATIVE EVIDENCE. Photographic enlargements of alleged forged checks, which clearly reveal differences not discernible from the originals, though cumulative, are demonstrative and different from expert opinion as to identity of signatures, so that new trial may be granted on the ground of such evidence. (Page 614.)

3. BANKS AND BANKING—DUTIES OF BANK—RETURN OF PAID CHECKS. It is the common-law duty of the bank to return to the depositor his paid checks, as evidence of payment of debt to the named payees. (Page 614.)

4. BANKS AND BANKING—DUTIES OF BANK—RETURN OF PAID CHECKS. Such rule does not apply if the checks represent an overdraft. (Page 615.)

5. NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE. Since a depositor has an absolute right to his paid' checks unless they represent an overdraft, a depositor, seeking recovery of deposits on the ground that checks charged against her were forged, is not lacking in diligence, after demand for the checks, and refusal of possession or inspection, in failing to secure court order for production. (Page 616.)

6. NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE. While counsel cannot be required to furnish evidence to the adversary, yet a court cannot uphold counsel in withholding material evidence from the court or from the adverse party, and if counsel have withheld relevant and material evidence, or denied him access to such evidence before trial, they are not to be heard to say that in addition to making timely demand, he should also have applied to the court for an order compelling production. (Page 616.)

7. NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE. Where defendant bank refused possession or inspection of paid checks to depositor, who alleged they were forged, and the court then

ordered inspection only in the presence of the court stenographer, failure to move for continuance to secure such evidence did not show acquiescence or lack of diligence, since continuance would have been useless. (Page 617.)

8. NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE. The mere fact that demand for paid checks by depositor suing to recover deposits on the ground that the checks were forged was oral does not render it of no avail, the depositor being entitled to the checks, so that no demand was legally necessary, especially in view of the fact that the oral demand apprised the bank of its purpose. (Page 618.)

9. APPEAL AND ERROR—DISCRETION OF COURT—REVIEW. The rule that granting new trial for newly discovered cumulative evidence is left wholly to discretion of trial court is not without exception; an abuse of discretion being subject to review. (Page 618.)

Appeal from District Court, Second District; *Hon. J. A. Howell,* Judge.

Action by Louise Van Dyke (nee Louise Turner) against the Ogden Savings Bank.

Judgment for defendant, and order denying new trial. Plaintiff appeals.

REVERSED AND REMANDED, with directions.

*V. Gideon, J. N. Kimball* and *Wade M. Johnson,* for appellant.

*Boyd, De Vine & Eccles,* for respondent.

FRICK, J.

The plaintiff alleged in her complaint that the defendant was "engaged in the business of a savings bank at Ogden, Utah"; that plaintiff formerly was the wife of one J. J. Turner and that she then "bore the name of Louise Turner"; that on December 29, 1908, in the name of Louise Turner, she deposited with the defendant bank the sum of $4,400, upon which sum the defendant agreed to pay interest at the rate of four per cent. per annum compounded semi-annually; that

on the 13th, and again on the 25th of October, 1913, she demanded said sum with the accrued interest thereon from the defendant, and that it then refused, and still refuses, to pay the same; that the amount deposited as aforesaid, with the accrued interest thereon, aggregated the sum of $5,531.83, for which she prayed judgment. The defendant answered the complaint, and denied "that the plaintiff deposited in the name of Louise Turner in said defendant bank the sum of $4,400 as alleged, but admits that certain moneys were, on said day, deposited to the credit of said plaintiff under said name." Defendant also admits that it agreed to pay interest as alleged on said deposit. The defendant further admitted a demand and refusal to pay and as an affirmative defense averred that all the moneys that were deposited as aforesaid "have been fully withdrawn by or upon the order of, and paid to, or upon the order of, plaintiff." The defendant further denied all indebtedness. A trial to a jury resulted in a verdict for the defendant. The court entered judgment upon the verdict, denied plaintiff's motion for a new trial, and she appeals.

We have set forth the substance of the pleadings to show both the nature of the action and the character of the defense. The plaintiff thus alleged that she had deposited a certain sum of money with the defendant bank, which it refused to pay to her. The defendant, while not admitting that plaintiff had deposited the amount alleged, and while not admitting any specific amount, nevertheless admitted that "certain moneys" had been deposited for the credit of the plaintiff. Defendant, however, averred that all the money that was deposited had, "upon the order of plaintiff," been withdrawn from the bank. The issues were thus quite narrow.

At the trial practically the whole question hinged upon the genuineness of plaintiff's signatures to the checks that were drawn against the deposit, and the authority of her husband to withdraw her money from the bank. It was made to appear that a large portion of the money that was deposited by the plaintiff had been withdrawn upon checks purporting to have been drawn and signed by plaintiff. The plaintiff, however, contended at the trial, and here insists,

that all the checks, with the exception of one or two small ones, were drawn by J. J. Turner; that he signed her name thereto without her knowledge or consent, and she insisted at the trial, and now insists, that her signatures to the checks were forged. A part of the deposited money was paid to J. J. Turner upon drafts drawn by him, which drafts, plaintiff insists, he not only had no authority to make, but that they were drawn and paid without her knowledge or consent. The real contest, therefore, arose over the genuineness of the signatures to. the checks in question. The plaintiff denied signing the checks, denied the authority of her husband to sign her name thereto, and she also denied all knowledge respecting the making and paying of the checks and drafts aforesaid. For the reasons hereinafter appearing it is not necessary to set forth the evidence of the several witnesses, except to state that the plaintiff, in addition to her own statements, also produced evidence of experts in handwriting, and other evidence, tending to show that the signatures to her checks were forgeries. Upon the other hand, the defendant produced plaintiff's former husband, J. J. Turner, who testified that she did sign the checks in question. The defendant also produced several experts in handwriting who testified that in their opinions the disputed signatures were in the handwriting of the plaintiff. If it were not for the matters now to be stated the judgment would have to be affirmed.

As before stated, however, the principal question for determination at the trial was whether the signatures to the checks were genuine or were forgeries. Both sides having presented their evidence upon that question, the court submitted the case to the jury upon instructions as to the law, of which no complaint is made. The plaintiff, however, vigorously contends that the court failed to exercise, or had abused, its discretion in refusing to grant her a new trial upon the ground of newly discovered evidence. Upon the other hand, the defendant insists that the court's rulings were right for the reasons: (1) That the alleged newly discovered evidence was merely cumulative; and (2) that plaintiff did not exercise due, or any, diligence to obtain and produce said alleged newly discovered evidence at the trial.

The nature or character of the alleged newly discovered evidence, and the undisputed facts, as they are made to appear by the affidavits filed in support of the motion for a new trial, relating to plaintiff's conduct and the efforts that were made to produce said evidence, are as follows: Plaintiff's counsel, Mr. Kimball, deposed that not less than sixty days before the case was called for trial he spoke to one of defendant's counsel, and demanded that the checks, or orders, relied on in the action by the defendant be produced for inspection; that defendant's counsel, at that time, neither granted nor denied the request, but did ask for time to consult with his partner and associate counsel; that about two weeks before the trial defendant's said counsel refused to produce said checks, and refused plaintiff's counsel inspection thereof; that one Douglas Swan, an expert in handwriting, was requested by plaintiff and her counsel to procure inspection of said checks for the purpose of making comparisons of the signatures thereon with plaintiff's genuine signatures and to better qualify himself to testify as an expert at the trial of said case; that said Swan, prior to the trial of said case, also demanded inspection of said checks from defendant's counsel for the purpose aforesaid, but was refused inspection, and was by said counsel informed that he could not obtain such inspection from the defendant. The plaintiff also deposed in her affidavit in support of her motion for a new trial that she had requested her said counsel, Mr. Kimball, and the witness, Mr. Swan, to procure said checks for inspection for the purpose aforesaid. It is also made to appear from the affidavits filed in support of the motion for a new trial that, in order to make a proper comparison of the signatures to the said checks with the genuine signatures of the plaintiff, and to demonstrate the difference between the genuine and the alleged forged signatures to the checks, it was necessary to make photographic enlargements of said signatures; that said Swan demanded said checks for the purpose of making such photographic enlargements and that he intended to and would have made such photographs before the trial, had his request been granted. It is also made to appear that when the case was on trial and defendant's coun-

sel had produced the checks and papers relied on by the defendant to establish its defense in court, plaintiff's counsel again, in open court, demanded possession and inspection of said checks and papers; that defendant's counsel objected to plaintiff's counsel being given possession of said checks and papers, but suggested that they should have the right of inspection only in presence of the court stenographer and while the checks were in her possession and under her control; that that was the first and only inspection plaintiff, or plaintiff's counsel, obtained of said checks and papers. It further appears from the record that after the jury had returned a verdict, and within the time plaintiff was required to file her motion for a new trial, the prosecuting attorney, in the name of the State of Utah, obtained inspection and possession of said checks for the purpose of making enlarged photographs of the signatures thereto; that said prosecuting attorney, on behalf of the State of Utah, did procure an expert in handwriting and signatures, and one skilled in making photographic enlargements of signatures, to make photographic enlargements of the signatures and writings relied on by the defendant in this action; that said enlarged signatures, properly authenticated, were made a part of plaintiff's motion for a new trial in connection with the affidavit of said expert, and such enlargements, thirty-two in number, are made a part of the record on appeal to this court. Both the expert aforesaid and said Swan also deposed in their respective affidavits that the signatures relied on by the defendant, in their opinions, are forgeries; that the photographic enlargements clearly show, and in their judgments will demonstrate, the peculiarities and characteristics of plaintiff's handwriting and also that of her husband, and will demonstrate the difference between the two handwritings; that said difference can only be shown and demonstrated to the minds of ordinary jurors, who are laymen, by the photographic enlargements of said signatures.

While the facts in the several affidavits in support of the motion for a new trial are stated with much greater particularity and detail, and while there are certain affidavits filed by some of the jurors, showing that they deliberated at least twenty-four hours, and which show some facts in impeachment of

their verdict, which later cannot be considered here, and while there were one or two counter-affidavits filed on behalf of the defendant, yet, in our judgment, the foregoing statement fairly reflects the controlling facts that were adduced both in behalf of and against the motion for a new trial.

The ground or grounds upon which the district court based its ruling in denying the motion does not appear. Defendant's counsel, however, defend the ruling upon the grounds that the alleged newly discovered evidence is cumulative merely, and that plaintiff's counsel have failed to show that they exercised due or any diligence to procure said evidence at the trial. Plaintiff's counsel, at least tacitly, concede that the alleged newly discovered evidence is, in one sense, merely cumulative. They, however, insist that it is of such a demonstrative character that a mere examination or inspection thereof produces a very strong conviction in the minds of the expert and layman alike, and especially in the mind of a layman, that a different result in all probability will be reached in case a jury of laymen are permitted to consider and pass upon said evidence. They further contend that in the modern decisions a more liberal rule has been adopted in granting new trials upon the ground of cumulative evidence of a particular type or character, in case there is no lack of diligence on the part of the party producing such evidence, than in the older cases.

It is quite true that under what may be termed ''the old rule'' new trials were very rarely, if at all, granted upon the ground of newly discovered cumulative evidence, although it was shown that the same could not have been discovered or produced at the trial with any degree of diligence. Sometimes, however, and under special conditions, a new trial was granted, although the evidence was cumulative merely. The old rule in that regard is perhaps as well stated as it is anywhere in 3 Graham and Waterman on New Trials, 1064, in the following words:

"The rule that newly discovered evidence must not be cumulative, though well settled, has an occasional exception. Where, by admitting it, what was before mysterious and doubtful becomes *plain and certain, so that, if received, the most obvious justice, and, if re-*

*jected, the most palpable injustice, will be done,* courts do not hesitate to adopt the former alternative." (Italics ours.)

See also, *Wall* v. *Trainor*, 16 Nev. 131, where the foregoing language is quoted. As we shall see from the quotations which follow many of the courts have adopted a somewhat less stringent rule. In 3 Enc. Ev. 944, it is said:

"In a few cases it has been distinctly announced that a new trial will never be granted for newly discovered cumulative evidence. But if such was ever the general rule (the facts of very few cases requiring the application of so stringent a rule), it may be said that the general trend of modern authority is favorable to the granting of new trials where the newly discovered cumulative evidence is of a controlling or decisive character, or even where it is such as to render a change in the result fairly probable."

In *Waller* v. *Graves*, 20 Conn. 310, Mr. Chief Justice Church states the exception to the general rule that a new trial will not be granted upon cumulative evidence thus:

"So, if the evidence now claimed to be newly discovered, is merely cumulative evidence, we cannot grant a new trial, *unless the effect of it will be to render clear and positive that which was before equivocal and uncertain.*" (Italics ours.)

In 29 Cyc. 916, 917, after stating the old rule that new trials were seldom, if ever, granted on cumulative evidence, it is said:

"A new trial may now be allowed, in some jurisdictions, for newly discovered cumulative evidence which, taken in connection with the evidence adduced at the trial, is sufficient to render a different verdict necessary, or highly probable, or probable, as the general rule for newly discovered evidence may be in the particular jurisdiction, or which will render clear what was doubtful at the trial; the character of the evidence affecting its weight only."

The rule just stated is the one adopted in *Oberlander* v. *Fixen & Co.*, 129 Cal. 690, 62 Pac. 254, and in *Keeler* v. *Jacobs*, 87 Wis. 551, 58 N. W. 1107, and cases cited in the two cases just referred to.

The photographic enlargements of the signatures to the checks, as before stated, are before us. While it would perhaps not be proper for us to state the impression those en-

largements has made upon our minds, yet it is proper for us . to state that it requires no argument to convince a dis- **2** interested mind that the enlarged signatures make much clearer the characteristics and peculiarities of the signatures that are in dispute, and therefore make clear that which, without them, was obscure and extremely doubtful. Moreover, the alleged newly discovered evidence is of the character which, in one sense, is direct, and is certainly more positive than would be the opinions of experts because it is naturally and essentially what may be termed "demonstrative evidence." If it be conceded, however, that the alleged newly discovered evidence, for the reasons stated, may be received and considered, notwithstanding its character, yet the question of whether plaintiff and her counsel exercised due and reasonable diligence in the premises still remains to be answered.

If it were not for the conceded conduct of the defendant and its counsel in refusing plaintiff, her counsel and witness possession and inspection of the checks in question, it would be clearly our duty to approve the ruling and judgment of the court below. When we come to consider the conduct of the defendant and its counsel in the premises, however, plaintiff's case assumes a different aspect.

For obvious reasons we need not dwell upon the duties of a banker to his depositor. We shall, however, for a moment pause to inquire into the actual condition of things as they are made to appear from the record. The record shows that on December 29, 1908, there was deposited under plaintiff's former name of Louise Turner in the defendant **3** bank the sum of $4,208.40; on May 1, 1909, the additional sum of $101.50, and on June 1st, following, the further sum of $120, making in the aggregate a deposit of $4,429.90. The first withdrawal of $100 was made on June 15, 1909. During that and the following year, and the year 1911, withdrawals were made in various amounts and at different dates, and on December 5, 1911, the final balance, amounting to $7.30, was withdrawn from the bank. All the amounts withdrawn, with the exception of one or two small amounts which were drawn by plaintiff herself, were withdrawn by J. J. Turner, either upon checks to which it is

claimed plaintiff's name was signed by her, or by drafts drawn by him. Plaintiff's deposits were therefore withdrawn within a period of about two and one-half years, and during all of the time, and for a long time thereafter, she had no knowledge of that fact, but supposed her money was safely in the defendant bank, drawing interest. Neither did she, during all that time, at least not personally, receive any statement of her account, nor were any of her paid and canceled checks returned to her by the bank. Indeed, when she, through her counsel, finally demanded possession of what the bank claims were her personal orders or checks upon the bank, they were refused, not only possession, but were also refused inspection thereof, and all this in the very teeth of her right to have possession of and control over her own paid checks as evidence showing to whom she had paid money and for what purpose she had paid it. In speaking of the custom that is practically universal respecting the depositor's right to the possession of his paid checks as between himself and the bank, the author, in 2 Morse on Banks and Banking, section 460, says:

"But further than this, there is ground for holding that it is also a duty of the bank at common law to return his paid checks to the depositor. He is considered to have the better right to them, for they are regarded as his evidence of payment of his debt to the payee named in them. The bank is said to hold them only as his agent."

The foregoing rule, of course, has no application in case the check represents an overdraft. In such event the bank, as a matter of course, has a right to retain the check as evidence of the drawer's order to pay, and that it has paid, the amount subject to his order. There may be other circumstances under which the bank, for a time at least, **4** may have the right to retain the depositor's checks as evidence, but no bank can successfully dispute the depositor's right to the possession of his paid checks, much less his right to inspection. Of course the bank may obtain the checks from the depositor as evidence in the ordinary way if they are material in any controversy between it and a depositor or otherwise. In this case, however, both the bank and its counsel

not only invaded, but wholly disregarded the legal rights of both plaintiff and her counsel without any legal excuse or justification whatever. We do not mean to be understood (indeed, we think the contrary is the fact) that either the officers of the bank or its counsel intended any wrong. Constructively, however, their acts and conduct had precisely the same effect upon plaintiff's case and her rights as though counsel had entertained bad motives.

It is, however, contended that the plaintiff had an adequate remedy by going into court and obtaining an order to obtain possession and inspection of the checks for the purpose alleged by her and her counsel, and hence it is contended that neither counsel nor plaintiff had exercised due or reasonable diligence in the premises. The foregoing **5, 6** contention and the character of the alleged newly discovered evidence present the only real difficulty in this case. After much reflection, and with considerable hesitation, if not with reluctance, we have been forced to the conclusion, which, however, has become firmly fixed, that the present case is an exception to the general rule. If in order to obtain possession of the checks it had required legal action of any kind, we would say that plaintiff's counsel were derelict in not taking that action. Where, however, as here, defendant's counsel had no right whatever to deny either possession or inspection of the checks, and where, as here, it was the defendant's duty to return plaintiff's checks to her, they, by reason of their conduct, obtained an undue advantage for their client over plaintiff. For the reasons stated it does not lie in the mouth of either the defendant or its counsel to say to plaintiff.:

"You were not diligent. You should have gone into court and coerced us to grant you possession and inspection of your checks."

To hold that counsel may successfully take and defend such a position upon an application of this kind is tantamount to placing a premium upon efforts to withhold evidence from the adversary to which he is clearly entitled. While counsel in no case and under no circumstances can be required to point out or to furnish evidence to the adversary,

yet in no event and under no circumstances can a court up-
hold counsel in any act which is calculated to bring the ad-
ministration of justice into reproach, or which tends to conceal
or withhold proper and material evidence from the court or
from the adverse party, and in case counsel have benefited
their client by their conduct in withholding from the oppo-
site party relevant and material evidence, or in denying him
access to such evidence before trial, they are not to be heard
to say to him, in case after the trial he discovers that in re-
fusing him possession or inspection he has been greatly preju-
diced, while his adversary has been benefited, that in addition
to making timely demand he should also have brought an ac-
tion in court. Under such circumstances no injury can come,
nor can any legal prejudice result, from requiring the offend-
ing party to submit to a full and fair trial of the case. More-
over, to sustain counsel's contention would result in making
the trial of cases a mere game of strategy.

Defendant's counsel, however, also urge that, when the dis-
trict court ruled that plaintiff's counsel should not have pos-
session of the checks and should inspect them only in the
presence of the stenographer, they acquiesced in the ruling.
What else could they have done? They obtained a rul-
ing which, no doubt, reflected the court's best judg-
ment, and that was all they were entitled to. It is,
however, said that plaintiff's counsel should then have applied
for a continuance of the case. To make such an application,
no doubt, ordinarily is the proper course to pursue. Under
the circumstances of this case, however, and especially in view
of the court's ruling that plaintiff's counsel should be given
possession of the checks and should have the right of inspec-
tion only in the presence of the court stenographer, such an
application would have been a mere waste of time. With-
out possession of the checks a continuance would have been
useless. The law does not require useless things. All that
plaintiff's counsel waived or lost in not excepting to the
court's ruling or in failing to apply for a continuance at the
time was the right to review the court's action in that regard.
They lost nothing else.

Defendant's counsel, however, also contend that the de-

mand for possession and inspection of the checks was insufficient because not in writing, and that it is therefore of no avail. We have already seen that the defendant should have delivered possession of the checks to the plaintiff as a matter of duty; hence no demand was legally necessary. But entirely apart from that, the demand was sufficient. Defendant's counsel were clearly apprised of what the demand was for, and they denied it, not because it was not in writing, but for other reasons. In view of that fact, even though they had such a right they waived it.

Finally, it is insisted that the question of granting a new trial upon the ground of newly discovered evidence, and especially where such evidence is, in its nature, cumulative, and the further question of whether the party applying for the new trial has exercised due and reasonable diligence in the premises, are questions that always are, largely if not entirely, left to the sound discretion of the trial courts. We need not refer to the numerous authorities which support those propositions. The rule that those questions must be left to the sound legal discretion of the trial court, and that appellate courts can grant relief only in case where it is made to appear, with at least reasonable clearness, that the trial court has abused its discretion, or has refused to exercise it, has practically become universal. This court, in common with many other courts, has frequently so held, and we have no desire to, nor do we by anything we have said, relax that wholesome rule. Upon the contrary, we thoroughly approve of it and reaffirm it. Without entering into further argument, however, it must suffice to say that in view of the peculiar circumstances of this case, as before stated, we feel constrained to hold, and do hold, that it must be considered as an exception to the general rule. It is quite clear that the district court did not take that view, but in all respects treated this case as falling within the general rules which govern the granting or denying of new trials, and hence we think that the court failed to pass on, or to exercise its discretion upon, the actual case before it, which, for the purposes of this case, in effect amounted to what is ordinarily termed, "an abuse of discretion" in refusing to grant a new trial.

The judgment is therefore reversed, and the cause is remanded to the district court of Weber County, with directions to grant a new trial. Costs to appellant.

STRAUP, C. J., concurs.

McCARTY, J. I concur in the order reversing the judg-