## Hamilton v. Beaver Falls S. and L. Assn.

*Philip E. Hamilton*, for plaintiff.

*Swaney & Whitmire* and *Frank E. Reed*, for defendant.

McCREARY, P. J., January 31, 1951.—This action is a suit in equity instituted by plaintiff, Philip E. Hamilton, against defendant, Beaver Falls Savings and Loan Association and the Farmers National Bank of Beaver Falls, Pa. Plaintiff alleges in his bill that for many years he has been attorney and solicitor for Beaver Falls Savings and Loan Association, and that until a time not specified in his bill, the account of the solicitor

was carried in the Farmers National Bank as "Philip E. Hamilton, Atty., Beaver Falls Savings and Loan Association". Plaintiff further alleges that defendant association then had this account changed so as to read "Beaver Falls Sav. & Loan Ass'n Mortgage Acct., Philip E. Hamilton, Atty.".

Plaintiff alleges that certain canceled checks as set forth in exhibit A of his bill were drawn by him as solicitor against this account, and claims he is entitled to possession of the same. At the time of the commencement of suit, the checks were in the possession of the Farmers National Bank. In his bill plaintiff requested that defendant, Beaver Falls Savings and Loan Association, be enjoined from taking possession of the checks and that the Farmers National Bank be required to deliver the canceled checks to plaintiff.

In due course, defendant, the Farmers National Bank of Beaver Falls, Pa., filed a petition disclaiming all right, title and interest in the checks, and asked the court's permission to deliver the checks to the prothonotary, and further requested that it be dismissed from the suit. Plaintiff filed an answer, and after hearing, the court directed the Farmers National Bank of Beaver Falls, Pa., to deliver the checks to the prothonotary and to furnish plaintiff and the Beaver Falls Savings and Loan Association with photostatic copies of the checks. Defendant bank complied with the order and was dismissed from this suit.

In his bill plaintiff further alleges that during the whole time he acted as attorney, or solicitor, for the Beaver Falls Savings and Loan Association his accounts of all moneys handled for the Beaver Falls Savings and Loan Association, and for mortgagors dealing with the association, have been deposited in his trust account at the Farmers National Bank of Beaver Falls, Pa., and that all checks issued have been issued on the account. He alleges that on October 6, 1950, the Board

of Directors of the Beaver Falls Savings and Loan Association passed a resolution requiring its solicitor to turn over into the possession of the secretary of the association all checks drawn by the solicitor on the trust account, and that he thereupon resigned as solicitor. All of the checks making up plaintiff's exhibit A were drawn prior to October 6, 1950.

In his pleading plaintiff outlines the system which has been followed by him and the savings and loan association over a period of 36 years as follows: The practice of the association has been to draw all checks payable directly to the mortgagors and have special endorsements placed thereon to be signed by the mortgagor payee, making the checks payable to the solicitor, plaintiff, who then deposited the fund in this trust account. It then became his duty to draw checks on this trust account for the association and for the mortgagors in payment of liens of record, and to make such other distribution as he might be directed to make by the mortgagors, including debts of borrowers not of record, and to pay the balance, if any, to the mortgagor.

He further alleges that over the period of 36 years during which he was solicitor for the Beaver Falls Savings and Loan Association all checks drawn by him on this trust account, when paid by the drawee bank and duly canceled, were returned to him at regular intervals, or on his demand. He further alleges that his accounts were regularly audited by the State Banking Department of Pennsylvania, whose examiners audited all checks drawn on the trust account, and in every instance his account was found to be in proper order. He says that in many instances the endorsement of checks over to the solicitor was made at the office of the Beaver Falls Savings and Loan Association, not by the solicitor, but by other officers of the association, and that the checks were then delivered to the solicitor, who deposited them in this trust account and was

charged with the duty of making proper distribution thereof at all times. He alleges that in many instances the payee was the Beaver Falls Savings and Loan Association itself, when there was money due to the association from the borrower on account of a prior mortgage loan, or note. He alleges that the only evidence he has of the proper distribution of the trust account is his canceled checks drawn on this trust fund, no matter in what name the account is carried. He further alleges that as trustee of this account he has drawn all checks on the account and is responsible for the proper distribution, not only to the association, but to the borrowers as well whose money is being distributed, once the title to the property is examined by the solicitor, the mortgage recorded, the title examined to the following day and certification accepted by the association. He was advised by the Farmers National Bank of Beaver Falls, the depository, that by reason of the resolution adopted by the Beaver Falls Savings and Loan Association requiring all canceled checks drawn on this trust fund to be returned to the association and not to Mr. Hamilton, plaintiff, it intended to turn over to the association all checks in its possession drawn by the solicitor on this trust account, and that he filed this bill in equity for the purpose of avoiding the catastrophe which might follow if his checks, as a depositor, were turned over to the savings and loan association.

He says that when the borrower from the Beaver Falls Savings and Loan Association would turn over to him the check of the savings and loan association payable to the order of the borrower and properly endorsed by the borrower specially to the order of plaintiff, he entered the name of the borrower on the deposit slip showing the bank that he was in fact trustee for the borrower, subject only to the obligation to see that all liens of record were paid off so as to clear the title, and subject further to the obligation to turn over to

the borrower the balance that may be left after paying liens of record and the expenses of the loan.

In paragraph 12 of the complaint plaintiff alleges that the present secretary, acting presumably by direction of the board of directors, had this account changed to read "Beaver Falls Savings and Loan Association, Mortgage Account, Philip E. Hamilton, Attorney". In paragraph 24 of the complaint plaintiff alleges that every month for many months after the secretary of the Beaver Falls Savings and Loan Association instructed the Farmers National Bank of Beaver Falls to change the name of the account, the secretary went to the Bank and took out the solicitor's checks and kept them at the office of the Beaver Falls Savings and Loan Association until plaintiff demanded that the checks be turned over to plaintiff, and that up to the time of the filing of the bill all of the checks had been turned over by the secretary of the Beaver Falls Savings and Loan Association to plaintiff, but that the savings and loan association had demanded, as of October 6, 1950, that all checks drawn on this account be turned over by the bank to the association rather than to plaintiff.

Defendant, the Beaver Falls Savings and Loan Association, filed preliminary objections to the bill as follows:

"1. With reference to the allegations contained in Paragraph 12. of the plaintiff's Bill, said plaintiff has failed to specify the date or approximate date on which he alleges the facts set forth in Paragraph 12. occurred.

"2. With reference to Paragraph 24. of the plaintiff's Bill, said plaintiff fails to state the date or approximate date it is alleged the Secretary of the Beaver Falls Savings and Loan Association instructed The Farmers National Bank of Beaver Falls, Pa., to change the name of the account.

"3. Defendant, Beaver Falls Savings and Loan Association, should not be required to answer the facts averred in the plaintiff's Bill since it has a full and complete defense to the plaintiff's claim which does not require the production of evidence to sustain it and which defense is stated as follows:

"If the plaintiff alleges that the facts set forth in Paragraph 12. of his Bill occurred prior to November 30, 1949, then the said plaintiff has failed to state a cause of action for the reason that in said Paragraph 12. of his complaint, the plaintiff alleges that the account was changed to stand in the name of Beaver Falls Savings and Loan Association. Such change vested both legal and equitable ownership of the account in said defendant Beaver Falls Savings and Loan Association, and with it, title to all cancelled checks written on said account, being all cancelled checks set forth in plaintiff's Exhibit "A" or dated on or after November 30, 1949."

We are of the opinion that none of these objections have any merit, and are further of the opinion that they must be dismissed.

As far as the first preliminary objection is concerned, it does not make the slightest difference, in the determination of this case, when the Beaver Falls Savings and Loan Association had the trust account name changed from "Philip E. Hamilton, Attorney, Beaver Falls Savings and Loan Association" to "Beaver Falls Savings and Loan Association, Mortgage Account, Philip E. Hamilton, Attorney". It is not the name by which the account is known that determines who has a right to the return of the canceled checks; it is the system that determines it. If plaintiff proves, at the trial of the case, the truth of the allegations of his bill, or if defendant files an answer admitting the truth of the averments of the bill, the chancellor would be compelled to grant to plaintiff the relief which he seeks,

namely, to compel the return of the canceled checks to the depositor, plaintiff. Certainly the date when the name of the account was changed by the savings and loan association is a matter peculiarly within the knowledge of the savings and loan association. If the Beaver Falls Savings and Loan Association deems it material that the pleadings show the exact date of the change of name, then they may set it up in their answer under the heading "New Matter" and require plaintiff to reply to it.

The second preliminary objection must be overruled for the same reason.

The third preliminary objection goes to the very heart of the case. It raises flatly the question as to whether the depositor of a trust fund has a right to the return of the canceled vouchers, or whether the savings and loan association is entitled to them. We do not have before us the question as to who is the owner of the trust fund. Certainly, when the Beaver Falls Savings and Loan Association makes out its check payable to the order of the mortgagor it has paid the mortgagor the amount of the mortgage loan and no longer has any beneficial interest in the fund, except a right to have the solicitor apply part of the money to the payment of debts of record, or liens. When the mortgagor endorses the check over to plaintiff as solicitor for the savings and loan association and it is deposited in the solicitor's trust fund, the beneficial owner of the fund is the borrower.

In 5 Zollman on Banks and Banking, §3401, this statement is made:

"It is the common-law duty of a bank to return to its depositors their paid checks as evidence of the payment to the payees named in them. . . ."

He cites as authority for this proposition the case of Van Dyke v. Ogden Savings Bank, 48 Utah 606, 161

Pac. 50. In that case the court said as follows (pages 614, 615) :

"For obvious reasons we need not dwell upon the duties of a banker to his depositor. We shall, however, for a moment pause to inquire into the actual condition of things as they are made to appear from the record. The record shows that on December 29, 1908, there was deposited under plaintiff's former name of Louise Turner in the defendant bank the sum of $4,208.40; on May 1, 1909, the additional sum of $101.50, and on June 1st, following, the further sum of $120, making in the aggregate a deposit of $4,429.90. The first withdrawal of $100 was made on June 15, 1909. During that and the following year, and the year 1911, withdrawals were made in various amounts and at different dates, and on December 5, 1911, the final balance, amounting to $7.30, was withdrawn from the bank. All the amounts withdrawn, with the exception of one or two small amounts which were drawn by plaintiff herself, were withdrawn by J. J. Turner, either upon checks to which it is claimed plaintiff's name was signed by her, or by drafts drawn by him. Plaintiff's deposits were therefore withdrawn within a period of about two and one-half years, and during all of the time, and for a long time thereafter, she had no knowledge of that fact, but supposed her money was safely in the defendant bank, drawing interest. Neither did she, during all that time, at least not personally, receive any statement of her account, nor were any of her paid and canceled checks returned to her by the bank. Indeed, when she, through her counsel, finally demanded possession of what the bank claims were her personal orders or checks upon the bank, they were refused, not only possession, but were also refused inspection thereof, and all this in the very teeth of her right to have possession of and control over her own paid checks as evidence showing to whom she had paid money and for what pur-

pose she had paid it. In speaking of the custom that is practically universal respecting the depositor's right to the possession of his paid checks as between himself and the bank, the author, in 2 Morse on Banks and Banking, section 460, says:

" 'But further than this, there is ground for holding that it is also a duty of the bank at common law to return his paid checks to the depositor. He is considered to have the better right to them, for they are regarded as his evidence of payment of his debt to the payee named in them. The bank is said to hold them only as his agent.' "

In section 3381 of the same volume the statement is made:

"It is the duty of a bank to render to its depositors periodical statements and to return the canceled checks and other papers covered by the statement."

He cites as authority for this proposition the case of First National Bank v. Patty (Tex. Civ. App.), 62 S. W. (2d) 629. In that case the court said (pages 630, 631):

"It is the duty of the bank to render to the depositor periodical statements of the depositor's account and return to him his passbook and the canceled checks covered by the statement, whereupon it becomes the duty of the depositor to examine the statement, canceled checks, and passbook, within a reasonable time, and report to the bank such errors or forgeries, if any, as may be evidenced by those documents. If he negligently fails to make such examination and report within a reasonable time, the account so rendered becomes an account stated between the bank and him, and if the bank is prejudiced by this negligence, the depositor is thereupon estopped to question the accuracy of the account so stated, or the genuineness of the forged items therein. Such is the general rule. 1 R. C. L. p. 213, § 12; 3 R. C. L. pp. 538, 539, § § 167, 168; 7 C. J. 687;

1 C. J. 711; *Leather Manufacturers' Nat. Bank v. Morgan*, 117 U. S. 96, 6 S. Ct. 657, 29 L. Ed. 811; *Weinstein v. Bank*, 69 Tex. 38, 6 S. W. 171, 5 Am. St. Rep. 23; *Fifth Nat. Bank v. Bank*, 92 Tex. 436, 49 S. W. 368; *Iron City Nat. Bank v. Bank*, 31 Tex. Civ. App. 308, 71 S. W. 612, 613; *Calvin Coal Co. v. Bank* (Tex. Civ. App.), 286 S. W. 901; *Union Tool Co. v. Bank*, 192 Cal. 40, 218 P. 424, 28 A. L. R. 1417, annotation; *Glassell Development Co. v. Bank*, 191 Cal. 375, 216 P. 1012, 28 A. L. R. 1427; *Prudential Ins. Co. v. Bank*, 227 N. Y. 510, 125 N. E. 824, 15 A. L. R. 146, annotation."

See also: Village of Homewood v. Homewood State Bank of Homewood, 294 Ill. App. 52, 13 N. E. (2d) 285; Petition of Clerk for Instructions Respecting Canceled Bank Checks, 261 Fed. 154, a case decided by the Circuit Court of Appeals for the Seventh Circuit, wherein it appears that the Attorney General demanded that the depository bank wherein the clerk of courts kept the moneys paid to him from time to time as fees for entering and docketing various papers turn all canceled checks over to the Treasury Department rather than to the clerk of courts who made the deposits. The circuit court of appeals ruled that the Treasury Department had no right to those canceled checks but that the bank must return them to the depositor, even though it was a trustee account in which the Treasury Department would ultimately have some beneficial interest.

In the case of Interstate Hosiery Mills, Inc., v. First National Bank of Lansdale, 139 Pa. Superior Ct. 181, the court, in reaching a conclusion as to the duties which a bank owes to its depositors and the reciprocal duties which the depositor owes to its bank, had this to say (pages 186, 187):

"While no degree of care on the part of the bank will relieve it from liability for paying a forged check, it may be relieved by the conduct of the depositor. When

a depositor's pass book has been written up and returned to him with the cancelled checks which have been charged to his account, it is his duty to examine such checks within a reasonable time and to report promptly any forgeries which he has discovered. Failure to make such examination, and discover the forgeries or failure to report forgeries so discovered deprives the depositor of a right of action against the bank. This principle is sometimes grounded on estoppel, sometimes on negligence of the depositor, and again the rendering of a statement by the bank is considered the equivalent of an account stated: *Est. of Globman v. Southwestern Nat. Bk.*, 103 Pa. Superior Ct. 589, 157 A. 626; *Marks v. Anchor Savings Bank*, 252 Pa. 304, 97 A. 399; *Myers v. Southwestern Nat. Bk.*, 193 Pa. 1, 44 A. 280; 9 C. J. S., Banks & Banking, §356 d (1)."

See also: Sherts, Executrix, v. Fulton National Bank of Lancaster, 342 Pa. 337, and Pennsylvania Title & Trust Company v. Meyer et al., 201 Pa. 299. The latter case was cited as authority by both parties in their written briefs, and we are satisfied that it does not touch on the precise point involved in the case we are considering.

According to the allegations of the complaint plaintiff, up to the time of his resignation, had the exclusive possession of the bank book. He also had the check book which contained stubs, after the usual fashion, on which plaintiff made entries corresponding to the entries made on the check. What opportunity would he have to compare the checks with the stubs and determine whether or not there were any forgeries if the checks were to be delivered into the possession of the Beaver Falls Savings and Loan Association? The pitfalls to which he might be exposed are clearly pointed out by the court in the case of Interstate Hosiery Mills, Inc., v. First National Bank of Lansdale, supra, and the other cases cited in the forepart of this opinion.

We are of the opinion that plaintiff has set forth in his complaint sufficient allegations of fact to entitle him to judgment in his favor if the defendant admits them to be facts when defendant files its answer. The third preliminary objection must be overruled.

We have carefully read the briefs of argument filed by both parties and examined the authorities mentioned therein. It seems to us that defendant has the wrong concept of what the issue in the case is when he cites many cases to show that when a bank account is carried in a particular fashion, under some circumstances the depositor is the owner of the fund and under other circumstances the cestui que trust is the owner of the fund. None of the cases point to any statement by any court in any State to the effect that the bank has no obligation to return the canceled checks of a depositor to the depositor himself, even though he is only a trustee of the account.

We can conceive a system whereby a savings and loan association can require canceled checks drawn by its solicitor to be returned by the drawee bank to the association offices rather than to the solicitor. It is possible that, where the association makes its check payable direct to its solicitor rather than to the borrower, or deposits the money to the credit of its solicitor, the association retains the beneficial ownership of the entire fund. The solicitor is only its agent for distribution just as their secretary might be. The checks issued by the solicitor and drawn on that fund are the association's checks. The association, in that event, is the depositor. We do not have such a situation in the case we are considering. If plaintiff proves the facts alleged in the complaint he will show that the association pays directly to the borrower and the borrower hands the check to plaintiff, who thereupon becomes the depositor, the agent of the mortgagor. The association parts with all beneficial ownership in the money. The money is the

property of the borrower and the solicitor becomes the depositor. The checks drawn on the fund are the solicitor's checks, not the association's checks, and he is entitled to their return when canceled. The association is protected by getting possession of the check paid to the borrower by it when that check is returned "canceled" by the bank.

Entertaining these views we make the following

### Order

Now, January 31, 1951, the preliminary objections filed at the above stated term and number are overruled, and it is ordered that defendant file an answer to the allegations set forth in plaintiff's complaint within 20 days from the date of notice of this order; upon failure of defendant to file a responsive answer within 20 days from the date of notice, plaintiff may enter judgment in favor of plaintiff and against defendant pro confesso by praecipe to the prothonotary.