### LINCOLN NATIONAL BANK OF CINCINNATI v MORGAN, Gdn, Etc

Ohio Appeals, 1st Dist, Hamilton Co

No 4312. Decided May 15, 1933

Harmon, Colston, Goldsmith & Hoadly, Cincinnati, for plaintiff in error.

Peck, Shaffer & Williams, Cincinnati, for defendant in error.

## OPINION

By ROSS, J.

The first defense was a repetition of the general denial in the original answer, except for the admission in both pleadings that "certain sums" were deposited in the bank to the credit of the guardian, and demand was made therefor.

The second defense was that the money was drawn out and expended for fees for the attorney for the guardian, pursuant to the laws of Kentucky, under which laws the guardian was appointed, qualified, and administered the estate of the minor.

The third defense was that the statute of limitations as contained in §11225-1 GC, of Ohio, barred $10,000 of the claim, cancelled checks having been returned to the attorney for the guardian who made the deposits in the name of the guardian.

The fourth defense was that the guardian can not claim two sums—$10,159.50 and $5,596.50—because she had acknowledged the receipt of same in proceedings in the Circuit Court of Wayne County, Michigan.

The fifth defense was that the guardian should have known of the unlawful withdrawals from defendant bank and is now estopped to assert her claim therefor.

The sixth defense is that a portion of the unlawful withdrawals from the bank were applied to the payment of just debts of the minor. It is stated in this defense: "that all and every part of the sums of said total of $29,317.11 drawn on said account against said deposits were properly applied and expended by said John T. Murphy for the use and benefit of the estate of said r

and in satisfaction of indebtedness of said estate.

"Defendant further says that, under the common law of the State of Kentucky, as expressed by the courts thereof, where one withdraws money from a bank without the authority of the depositor and applies such withdrawals to the payment of proper obligations of the depositor, said depositor may not recover from the bank for the moneys thus withdrawn."

The court was most liberal in permitting the defendant wide latitude in its proof.

Before commenting upon the action of the trial court in refusing leave to file the amended answer, we shall briefly review the pertinent evidence.

The plaintiff was appointed and qualified as guardian of the estate of her minor child under a proper proceeding in the County Court of Kenton County, Kentucky. She found it necessary to absent herself from the country. In her absence from time to time certain checks were received by her attorney John T. Murphy, an attorney in Covington, Kentucky, who had represented the guardianship in its administration and in certain litigation. Murphy took the first of these checks, in amount $20,915.66, which was payable to the order of "Madeline Corby Morgan, Special Guardian of Marie Therese Corby" and signed by "The Scripps Jefferson Land Company" to the defendant bank—opened an account in the name of the payee of the check and deposited it in such account. The check bore a previous per endorsement by Murphy, which had been crossed out. The check had been sent to the plaintiff in Europe and endorsed by her. The Bank put the check through and when it cleared notified Murphy, who then mailed the Bank a signature card, which had been given him at the time of opening the account. Upon the card he had written, unknown to the Bank, the name of the guardian and typewritten her title thereunder.

Checks were deposited thereafter totaling $50,192.77—all the property of the minor's estate.

All of this money was drawn out, with the exception of a few dollars, by Murphy, upon the forged signature of the guardian, conforming to such signature forged upon the signature card.

Upon demand, Murphy returned to the guardian the amount of the original check for $20,915.66, and this sum was credited to the defendant; the amount claimed in the petition being the difference between the total amount of the deposits in the defendant bank and the sum so replaced by Murphy.

Murphy was permitted to testify to a contract with the guardian providing for payment of fees to himself and that he had paid out for the estate $7,000.00. Nowhere in the evidence does it appear that, even though the laws of Kentucky permit such disposition of guardianship funds, that such disbursements have been approved by the court controlling the administration of the guardianship estate.

The funds deposited in the defendant bank to the credit of the estate of the minor have been exhausted under the forged signatures of the guardian. The minor's property has been unlawfully taken and nothing short of estoppel as against the minor will operate as a defense to the claim of the guardian for the estate of the minor. It must be borne in mind that this is an action to recover the property of the minor unlawfully taken from it through a forgery. Even the fact that the Bank could have easily prevented the fraud in many ways is not controlling. Its liability to restore the funds dissipated by it through forgery is inescapable, unless due to the fault of the minor.

We quote from one authority which so clearly covers all the contentions of the plaintiff in error that it is unnecessary to cite other authorities, though as indicated therein these exist. We refer to the case of Telegraph Co. v Davenport, 97 U. S. Rep., 369. In this case the brother of the guardian of two minors was an officer in a bank in which the guardian, his sister, kept a safe deposit box containing securities belonging to the estate of the minors. Her brother had the key to this box during her absence in Europe. The brother removed the certificates of one minor, forged the endorsement, and sold the certificates. Thereafter the guardian returned, asked for and received the box, but returned it without opening it, and again left the city. The brother again took from the box the certificates of the other minor, forged the endorsement and sold his certificates. Suit was instituted by the minors against the corporation to have their stock restored, or for judgment for its value. We quote the opinion of Mr. Justice Field in full:

"Upon the facts stated there ought to be no question as to the right of the plaintiffs to have their shares replaced on the books of the company and proper certificates is-

sued to them, and to recover the dividends accrued on the shares after the unauthorized transfer; or to have alternative judgments for the value of the shares and the dividends. Forgery can confer no power nor transfer any rights. The officers of the company are the custodians of its stockbooks, and it is their duty to see that all transfers of shares are properly made, either by the stockholders themselves or persons having authority from them. If upon the presentation of a certificate for transfer they are at all doubtful of the identity of the party offering it with its owner, or if not satisfied of the genuineness of a power of attorney produced, they can require the identity of the party in the one case, and the genuineness of the document in the other, to be satisfactorily established before allowing the transfer to be made. In either case they must act upon their own responsibility. In many instances they may be misled without any fault of their own, just as the most careful person may sometimes be induced to purchase property from one who has no title, and who may perhaps have acquired its possession by force or larceny. Neither the absence of blame on the part of the officers of the company in allowing an unauthorized transfer of stock, nor the good faith of the purchaser of stolen property, will avail as an answer to the demand of the true owner. The great principle that no one can be deprived of his property without his assent, except by the processes of the law, requires in the cases mentioned that the property wrongfully transferred or stolen should be restored to its rightful owner. The maintenance of that principle is essential to the peace and safety of society, and the insecurity which would follow any departure from it would cause far greater injury than any which can fall, in cases of unlawful appropriation of property, upon those who have been misled and defrauded.

"We do not understand that the counsel of the appellant controvert these views, but they contend that the mother of the plaintiffs, as their guardian, was chargeable with culpable negligence in the keeping of the certificates, and, therefore, that the plaintiffs are estopped from claiming them or their value from the company. The negligence alleged consisted in the fact that she intrusted her brother with the key to the box in which they were deposited when she knew that he was insolvent, and that he had used, without her authority, funds received by him on a previous sale of a portion of her property; and the further fact, that when, in the summer of 1871, before leaving for Europe, she sent for the box, she returned it to the bank without examining its contents. To have allowed her brother, when known to be insolvent, to have access to the box after he had, without her authority, appropriated to his own use her funds, and to have returned the box to the bank in 1871 without examining its contents, were, according to the contention of counsel, offences of such gravity as to estop her wards, the minor children, from complaining of the company for allowing their stock to be transferred on its books under a power of attorney which he had forged. We do not think it at all necessary to comment at any length upon this singular position; for even if it were possible, as it is not, to preclude the minor heirs from asserting their rights to property received from their father, by reason of any negligence of their guardian, we are unable to perceive any necessary connection between her brother's insolvency and misappropriation of her funds, and the forgery of the children's names, or between such forgery and her omission to open her box in 1871 and examine its contents. There is no circumstance here upon which an estoppel against the plaintiffs can be raised. To create an estoppel against them, there must have been some act or declaration indicating an authorization of the use of their names, by which the company was misled, or a subsequent approval of their use by acceptance of the moneys received with knowledge of the transfer. No act or declaration is mentioned, either of the guardian or her children, which tends in the slightest degree to show that any assent was given to the use of their names. But moreover, neither the guardian nor the children whilst they were minors, were competent, even by the most formal act, to authorize a transfer and sale of the property. Under the statute of Ohio, the intervention of the Probate Court was essential to any such proceeding. No inference could, therefore, be drawn from any negligence of theirs in support of a transfer of the property, where no order of that court authorizing a transfer had been made.

"There are numerous decisions of the English and American courts in accordance with the views stated. They are cited by counsel in their briefs, and are given in a note to this opinion. We do not think it important to refer to them specifically, for no number of adjudications can add to the force of a simple statement of the facts.

The decree of the court below in each case must be affirmed; and it is so ordered."

There are two differences in this case from the one at bar, neither of which we feel changes the application of the rules laid down. The Davenport case was a suit by the defrauded minors. The instant suit is by the guardian. It seems obvious to us that this can not change the rule, for the guardian is suing not for herself, but for the estate of the minor. Were this a suit by the minor upon reaching majority, there could be no question as to the identity of fact. Such delay can not be necessary in order to apply the principle involved.

The other feature is that the signatures of the minors were forged in the Davenport case; while in the instant case it was that of the guardian that was forged. If anything it would seem that this only strengthens the application of the principle to the instant case, for it might well be that a bank or other corporation might easily be led into difficulty by the forgery of the name of an individual stockholder or depositor, where on the other hand the presence of the guardian's signature is an immediate caveat that the authority is limited and governed by the orders of a court, to which reference can easily be made. In the instant case such reference would have shown that the signature of a Bonding Company was necessary upon checks withdrawing funds from the estate and that a designated depository in Kentucky was the only one entitled to the funds, of the estate.

The fact that the forgery was committed against an ordinary corporation in the Davenport case, while in the instant case the defendant is a bank and the forgery of checks involved again only makes the rule laid down more obvious.

A word is necessary as to one other defense, possibly not covered by the authority noted. The statute of limitations, provided for in §11225-1 GC, is only available after notice to the depositor or after return to the depositor of the cancelled checks. The depositor in this case is the guardian. No notice was ever given to the guardian, nor were any checks ever returned to her. The attorney was not the depositor any more than any messenger or other employee from an office would be a depositor merely because he carried the daily deposits from the place of business of his employer to the bank. To avail itself of the privileges of the statute, the Bank must bring itself strictly within its provisions. Certainly the legislature did not intend to relieve the Bank from liability until the depositor had either notice or had received the cancelled checks. To excuse from liability when the forger was still the custodian of the cancelled checks would work a hardship of such grevious character that the intent to inflict it must be rejected.

We conclude, therefore, that the court did not abuse its discretion in refusing leave to file the amended answer, and that no evidence was presented constituting a valid defense to the claim of the minor asserted through her guardian against the defendant bank for the unlawful withdrawal of the funds through forgery of the signature of her guardian.

The judgment is affirmed.

HAMILTON, PJ, and CUSHING, J, concur.