Elmer GIPSON, Plaintiff and Respondent,

v.

FIRST NATIONAL BANK OF BISMARCK, a corporation, Defendant and Appellant.

No. 7810.

Supreme Court of North Dakota.

May 7, 1959.

J. K. Murray, Bismarck, for plaintiff and respondent.

Cox, Pearce & Engebretson, Bismarck, for defendant and appellant.

MORRIS, Judge.

This is an action by a bank depositor to recover from the defendant bank the sum of $1,396 that represents the total amount of 34 checks in various amounts, the smallest being $15 and the largest $125, which the plaintiff alleges to be forgeries that were negligently debited to the plaintiff's checking account between December 2, 1953 and February 27, 1954, inclusive. The checks were never produced. The bank records show that the plaintiff's statements of account with vouchers for the months of December, 1953 and January and February, 1954 were mailed to the plaintiff at his correct address in each instance during the first few days of the month following the month represented by each statement. The plaintiff testified that he never received or saw any of these statements, vouchers or checks.

It further appears that early in April, 1954 the plaintiff discovered that a number of checks that had been forged by one Walter Savenko had been charged against his account in March and April, 1954. Upon the suggestion of a bank official the plaintiff took Savenko to the bank. These forgeries were admitted. The checks were produced and the total amount of $730 was paid to the bank by Savenko and his mother and remitted by the bank to the plaintiff. These March and April checks are not involved in this case but they, together with other evidence, give rise to a strong inference that Savenko intercepted the plaintiff's statements of his bank account and canceled checks for the preceding December, January and February although on the witness stand he denied doing so.

On May 15, 1954, Walter Savenko signed an affidavit in which he stated, "That I made out and cashed the following checks that were signed by me in Elmer Gipson's name and were written on the First National Bank of Bismarck, North Dakota, and the money was received by me, as follows and on or about the following dates and in the following amounts." Then follows a list of dates and amounts that correspond to those set forth in the plaintiff's complaint. After the list appears this further statement:

"That I had no authorization to do the act of making these checks, and that they were written without the consent or knowledge of Elmer Gipson."

On being confronted with this affidavit on the witness stand Savenko repeatedly denied that he had forged any of the specific checks listed and maintained:

"If Gipson thought I owed him that money or forged the money out of the bank, I'm willing to pay it back. * * I said I would pay them if he thought I forged that money out of the bank, that amount, and I would pay him that money if he thought he had it coming."

The bank furnished plaintiff with copies of the statements of plaintiff's account for the months of December, January and February and the plaintiff designated the amounts thereon which he claimed represented charges against his account for checks which he had never written. These amounts correspond to the amounts of the alleged forged checks listed in plaintiff's complaint and the affidavit of Walter Savenko. While the evidence is not altogether satisfactory as to the specific forged checks charged to plaintiff's account, we can not say that as a matter of law the evidence is insufficient to sustain the verdict in this respect.

■ It is the general rule that a bank is charged with knowledge of the signatures of its depositors and in the absence of negligence on the part of a depositor a bank is liable for charging a forged check to his account. 7 Am.Jur., Banks, Section 574; 9 C.J.S. Banks and Banking § 356; Michie on Banks and Banking, Permanent Edition, Vol. 5 B, Chapter 9, Section 274.

As a defense the bank has pleaded Section 6–0807, NDRC 1943, which provides:

"No bank shall be liable to a depositor for the payment by it of a forged or raised check unless within ninety days after the end of the month in which such check is paid such depositor shall notify the bank in writing that the check so paid is forged or raised."

At no time prior to the commencement of this action in October, 1954 did the plaintiff give the notice provided by this statute.

It is not uncommon to find statutes requiring the depositor to notify a bank that has charged a forged check against his account within a limited time after the forged check has been returned to the depositor. See Flaherty v. Bank of Kimball, 75 S.D. 468, 68 N.W.2d 105, wherein the court applied SDC 6.0422 which provides:

"No bank shall be liable to a depositor for the payment by it of a forged

or raised check unless within three months after the return to the depositor of such check such depositor shall notify the bank that the check so paid was forged or raised."

Statutes containing substantially the same provisions are or have been in effect in Kansas, see Herbel v. Peoples State Bank of Ellinwood, 170 Kan. 620, 228 P.2d 929, and Michigan, see Benge v. Michigan National Bank, 341 Mich. 441, 67 N.W.2d 721, 50 A.L.R.2d 1108. From a reading of these cases we reach the conclusion that under those statutes it is generally held that the statute does not bar the right of recovery by a depositor who failed to give the notice prescribed by statute because the depositor did not receive knowledge or the means of knowledge by the return of his forged check or otherwise that the forged check had been charged against his account, but that such a statute does bar a recovery against the bank in cases falling within its terms.

■ We mention these statutes and cases from other states in order to distinguish this case from those cited by the parties and to emphasize the absence in our statute of any requirement that the depositor have notice of forgery because of the return of his forged check or otherwise since it provides that the depositor shall notify the bank in writing of the forgery within ninety days after the end of the month in which the check is paid in order to hold the bank liable. On this point the statute is clear and is therefore not open to construction. Only statutes that are ambiguous and of doubtful meaning are subject to judicial interpretation. State for Benefit of Workmen's Compensation Fund v. E. W. Wylie Co., 79 N.D. 471, 58 N.W.2d 76; Sutherland Statutory Construction, 3d Ed., Sec. 4502.

■ The evidence shows that at the close of business of each calendar month the bank prepares a bundle of all the checks charged against the depositor's account dur-

ing that month and wraps around it a ledger sheet showing deposits to and charges against the account. This bundle is for delivery to the depositor. The statute under consideration places on the depositor the burden of ascertaining whether a forged or raised check has been charged against his account and thus place himself in a position to give the required notice to the bank. Our statute appears to be unique in this respect. We have diligently searched for a comparable statute outside of our jurisdiction and have found none. None has been pointed out to us. "But we must adopt the plain meaning of a statute, however severe the consequences." Jay v. Boyd, 351 U.S. 345, 76 S.Ct. 919, 927, 100 L.Ed. 1242. We have no choice but to apply our statute as written in the absence of waiver or estoppel on the part of the bank.

■■ Over the objection of the defendant the trial court instructed the jury on the law of waiver and estoppel and left to the jury the questions of fact as to whether the defendant had waived the defense afforded it by Section 6–0807, NDRC 1943, or had by its conduct become estopped from asserting that defense. Since the jury found in favor of the plaintiff we must assume that it reached the conclusion that the defendant either waived or was estopped from asserting the statute as a defense. The question before us at this point, therefore, is whether the evidence is sufficient to sustain a finding of the jury that the defendant either waived or was estopped from asserting the defense under consideration. This court has repeatedly defined waiver as the "voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim, or privilege, which except for such waiver the party would have enjoyed." Meyer v. National Fire Insurance Co., 67 N.D. 77, 269 N.W. 845, 850; Sjoberg v. State Automobile Insurance Association, 78 N.D. 179, 48 N.W. 2d 452; Kessler v. Thompson, N.D., 75 N.W.2d 172. In Jacobson v. Mutual Benefit Health & Accident Association, 70 N.D. 566, 296 N.W. 545, 548, we said:

"To constitute a waiver there must be an intention to relinquish a known right, an intentional forbearance to enforce a right."

In Werner v. Werner, 74 N.D. 565, 23 N.W.2d 757, we held:

"An essential element of equitable estoppel is a representation which may consist of words, acts or silence, believed and relied upon by the party claiming the benefit of the estoppel which induced him to act or refrain from acting, to his prejudice."

This statement has been quoted or cited with approval in the following cases: Sailer v. Mercer County, 75 N.D. 123, 26 N.W.2d 137; Star v. Norsteby, 75 N.D. 563, 30 N.W.2d 718; Commercial Credit Corporation v. Dassenko, 77 N.D. 412, 43 N.W.2d 299; Minneapolis, St. Paul & Sault Ste. Marie R. Co. v. Duvall, N.D., 67 N.W. 2d 593.

■ According to the testimony of the plaintiff, shortly after he discovered the forgeries for which settlement was made he had several conversations with the vice-president of the defendant bank who told him that the bank would not pay unless the checks were produced. The plaintiff further testified that in a later conversation had during the early part of May, 1954 the vice-president, in the presence of plaintiff's attorney, said:

"that if I could produce the checks the Bank would pay, otherwise it wouldn't."

The plaintiff predicates waiver or estoppel on these conversations and the promise of the vice-president that the bank would pay if the checks were produced. It is argued that because of these conversations and the promise to pay the checks if they were produced the plaintiff was induced to forego giving the notice required by the statute, that it was the duty of the bank officer to advise the plaintiff of the necessity of giving such notice and that the bank is estop-

ped by reason of the silence of its officer in this respect. The checks were never produced. In their absence it is clear that there was no waiver of the statute. There is no indication from the conversations with the vice-president that he intended to relinquish or forbear the enforcement of any right which the bank had in the absence of the production of the checks. Clearly there was no waiver. Neither did the conduct of the vice-president amount to an estoppel. There is no evidence to indicate that the conversations in any way contributed to the failure of the plaintiff to give the notice prescribed by statute. According to the plaintiff's own testimony he was told that the bank would not pay if he did not produce the checks that he claimed were forged. There was no concealment on the part of the bank officer of any fact pertinent to the controversy. Neither was there a failure of performance of any duty on his part.

> "Where there is no fraud shown, neither the ignorance of a person of his right to bring an action nor the mere silence of a person liable to the action prevents the running of the statute of limitations. Coe v. Sloan, 16 Idaho 49, 100 P. 354." Kenyon v. United Electric Railways Co., 51 R.I. 90, 151 A. 5, 8.

The burden is on the plaintiff to establish his contention that the defendant waived its right to assert the defense of the statute under consideration or that it was estopped from doing so by the conduct of its vice-president. There is no evidence that the defendant intended to waive its statutory defense in the absence of the production of the forged checks or that the plaintiff failed to give the statutory notice because of any act or breach of duty on the part of the defendant bank, its officers or agents. Because of the failure of the plaintiff to comply with the provisions of Section 6–0807, NDRC 1943, this action cannot be maintained. The judgment entered in favor of the plaintiff pursuant to the verdict and the order of the trial court deny-

ing defendant's motion for judgment notwithstanding the verdict are reversed and the case remanded with directions to enter judgment for the defendant.

SATHRE, C. J., and BURKE and TEIGEN, JJ., concur.