FARMER'S UNION CENTRAL EXCHANGE, INC., Plaintiff,

v.

RELIANCE INSURANCE COMPANY, Defendant.

and

CONOCO, INC., Plaintiff,

v.

RELIANCE INSURANCE COMPANY, Defendant.

Civ. Nos. A1–83–79, A1–83–96.

United States District Court, D. North Dakota, Southwestern Division.

Sept. 23, 1985.

Sean O. Smith, Daniel L. Hovland, Bismarck, N.D., for Farmer's Union Central Exchange, Inc.

Jane Fleck Romanov, Bismarck, N.D., for Conoco, Inc.

Zuger & Bucklin, James S. Hill, Bismarck, N.D., Patrick J. O'Connor, Jr., Hart & Bruner, Minneapolis, Minn., for Reliance Ins. Co.

## MEMORANDUM AND ORDER

VAN SICKLE, Senior District Judge.

This Memorandum and Order is addressed to the motions for summary judgment currently pending in the above captioned cases. In both cases, Plaintiffs seek to recover under payment and performance bonds which Defendant executed as surety, as well as on claims for bad faith failure to pay on the bonds. Defendant moves for summary judgment, alleging that the bond claims are barred by a statute of limitations and that Plaintiffs have not alleged sufficient facts to state either a tort claim or a claim under the North Dakota insurance practices statute. Plaintiffs oppose those motions. In addition, Plaintiff Conoco, Inc. moves for partial summary judgment in Civil No. A1–83–96, seeking a ruling that, in order to recover on its bond claim, it need not establish with specificity that the materials it supplied were incorporated into a particular bonded project. Defendant opposes that motion.

## FACTS—A1–83–79

Farmer's Union Central Exchange, Inc. (Cenex) contracted with Scherbenske Excavating, Inc. (Scherbenske) to supply asphalt oil for several road construction projects with which Scherbenske was involved during the summer of 1981. Three of the projects were state or city contracts for which Scherbenske provided payment and performance bonds for the protection of those parties who supplied labor or materials to Scherbenske. Reliance Insurance Company (Reliance) executed each of the three bonds as surety.

The contract between Cenex and Scherbenske provided that Cenex would sell Scherbenske a given amount of asphalt oil during the 1981 construction season at a fixed price per ton. (Buska Deposition at 7). The asphalt oil was transported periodically from Cenex's Bismarck, North Dakota terminal to Scherbenske's Beulah, North Dakota "hot plant." (Buska Deposition at 13–14). Scherbenske had several construction contracts in the Beulah area during the 1981 construction season, and used asphalt oil purchased from Cenex on projects other than the three projects for which Reliance acted as bond surety. It also used asphalt oil purchased from suppliers other than Cenex on the three bonded projects. Under terms of their contract, Scherbenske was to pay Cenex within thirty days of the date of each invoice. (Buska Deposition at 32).

Cenex shipped oil to Scherbenske's "hot plant" on various dates during 1981. The last shipment Cenex supplied to Scherbenske was delivered on October 9, 1981. Scherbenske defaulted on payments for asphalt oil shipped after September 8, 1981. (Buska Deposition at 32). After Scherbenske defaulted, Cenex attempted to secure payment by collecting on the surety bonds. By letters dated February 23, 1982, Cenex gave notice to each of the three governmental entities involved on the bonded projects (State of North Dakota, City of Dodge, and City of Beulah) that it was filing claims on the surety bonds. (Exhibits to Complaint). Cenex gave the same notice to Reliance, through its general agent Fargo Insurance Agency, on the same date. (Complaint ¶ VIII).

On June 8, 1982, Cenex, through its attorney Morris A. Tschider (Tschider), contacted Reliance's Midwest bond claims manager H.S. Hudson (Hudson) concerning Cenex's claims on the three bonded projects. Hudson told Tschider that Reliance would take no action until Scherbenske declared default, that Reliance expected to be involved once default was declared, that Reliance would make payment on the bonded projects, but that he expected there would be problems in allocation of amounts supplied by Cenex for use on the bonded projects. (Tschider Deposition at 12). On July 2, 1982, Tschider again contacted Hudson and was informed that Scherbenske had declared default on June

28, 1982, and that Hudson would mail the necessary claim forms to Cenex for completion. (Tschider Deposition at 17). During the July 2, 1982 conversation, Hudson told Tschider that Reliance was working "super hyperactive" on the Cenex claims. Scherbenske filed a petition in bankruptcy on July 14, 1982. (Complaint ¶ XIII).

By letters dated July 28, 1982 and July 29, 1982, Reliance requested information verifying the quantities of asphalt oil supplied by Cenex and used on the three bonded projects. Reliance supplied the claim forms at that same time, approximately one month after Hudson had promised to mail the forms. The letters stated that Reliance was unconditionally reserving all of its rights under the bonds and under applicable law. (Tschider Deposition Ex. 8 & 9). Because asphalt oil supplied by Cenex had apparently been commingled with that purchased from other suppliers, and because asphalt oil supplied by Cenex had apparently been used on Scherbenske's unbonded projects as well as on its bonded projects, Reliance asserted that verification of Cenex's bond claims was a complicated task. (Tschider Deposition at 22–23). On September 30, 1982, Cenex submitted the claim and affidavit forms required by Reliance. Cenex claimed it was owed $46,-419.21 on the State of North Dakota project, $85,417.49 on the City of Dodge project, and $42,188.80 on the City of Beulah project. Tschider was apparently confident that Reliance would make a settlement offer after these forms were submitted. (Tschider Deposition at 35–36). Tschider and Hudson discussed the Cenex claims again on November 23, 1982; Tschider asserts that Hudson stated during this conversation that he either had hired or would hire an asphaltic engineer to "reconstitute the jobs" and that Reliance would be making an offer on the Cenex claims within the first two weeks of December, 1982. (Tschider Deposition at 36–37). Tschider made further inquiry on the Cenex claims in January, 1983. On March 10, 1983, Hudson advised Tschider that Reliance would make no settlement offer. Reliance took the position that Cenex's claims were barred by N.D.Cent.Code § 48–02–17 (1978)[1] since Cenex did not file suit within one year of October 9, 1981, the date on which it last supplied materials to Scherbenske. Tschider was apparently not aware of this statute until Reliance asserted its application. (Tschider Deposition at 54). Cenex then initiated suit in state court by summons and complaint dated March 31, 1983. Reliance filed a petition for removal of the action to this court.

### FACTS—A1–83–96

Conoco, Inc. (Conoco) supplied labor and materials to Scherbenske from August, 1980 through October, 1981. During this period, Conoco supplied asphaltic oil to Scherbenske's "hot plants" in Jamestown, North Dakota and Zap, North Dakota. Scherbenske had contracted on three highway construction projects in that area and Reliance, acting as surety for Scherbenske, had executed payment and performance bonds for each of those three projects (Mercer County, North Dakota; Stutsman County, North Dakota; and Valley City, North Dakota). The dates on which Conoco last supplied materials to Scherbenske on each of the projects were: September 17, 1981 on the Mercer County project, October 16, 1981 on the Stutsman County project, and October 10, 1981 on the Valley City project. Scherbenske defaulted on its obligations to Conoco. On April 8, 1982, Conoco secured a promissory note from Scherbenske for the amount of the outstanding debt. Collection on that note is the subject of an action currently pending in another division of this district. Civil No. A3–82–127.

On or about July 14, 1982, David Nigh, Conoco's in-house counsel, contacted Hudson, of Reliance, regarding collecting on the bonds for each of the three projects. On July 28, 1982, Hudson sent bond claim forms to Nigh, along with a letter similar in content to the July, 1982 letters from Reliance to Cenex; Reliance stated in that

---

**1.** A later amendment to that statute has no application to this case.

letter that it was unconditionally reserving all of its rights under the bonds and under applicable law. Reliance received the completed claim forms from Conoco on September 14, 1982. Conoco submitted claims in the amounts of $175,651.50 for the Mercer County project, $36,724.33 for the Stutsman County project, and $103,378.26 for the Valley City project.

In October, 1982, Conoco again contacted Reliance regarding the bond claims. This contact was made by Wesley Spears, who had replaced Nigh as in-house counsel, and William Ronne, an assistant treasury manager for Conoco. Hudson told Spears and Ronne that he was investigating Conoco's claims and would contact Conoco when he had finished that investigation. (Spears Deposition at 16–17; Ronne Deposition at 64–66). Conoco asserts that Hudson in fact did little or no investigation of the claims. (Hudson Deposition at 136–40, 148). Spears contacted Hudson again in December, 1982. Hudson again told Spears that the claims were being investigated and that he would contact Spears after the investigation was concluded and Reliance had determined what portion of the amounts claimed would be paid. (Spears Deposition at 17; Ronne Deposition at 66–67). Spears again contacted Hudson in January, 1983 and during this conversation Hudson raised Reliance's statute of limitations defense. Conoco initiated suit to collect on the bonds on April 28, 1983 in a state court. Reliance filed a petition for removal to this court on May 27, 1983.

## RELIANCE'S MOTIONS

In support of its motion for summary judgment, Reliance argues that the Cenex and Conoco bond claims are barred by a one year statute of limitations, that the tort claims asserted by Cenex and Conoco are merely conclusory allegations insufficient to support the claims, and that Cenex and Conoco fail to state a claim under North Dakota's insurance practices statute.

Application of N.D.Cent.Code § 48–02–17

Reliance asserts that the claims of both Cenex and Conoco are barred by N.D.

Cent.Code § 48–02–17 (1978), which provides:

> All claims for any labor, material, or supplies furnished for improvements, upon which suit is not commenced within one year after completion of the claimant's contribution of labor, material, or supplies, shall be barred as liens or claims against said contractor and his surety. No action upon any such claim so barred shall be maintained nor any right of setoff or counterclaim thereon enforced in any court in this state against the state or contractor or his surety. Nothing in this chapter in any manner shall bar the right of any person who has furnished labor, supplies, or materials to any subcontractor to enforce the same against the subcontractor.

Cenex and Conoco argue that this statute applies only to *building* construction projects and not to *road* construction projects and that, even if the statute applies to road construction projects, Reliance is estopped from asserting the statute because of Hudson's conduct in handling the bond claims.

The application of section 48–02–17 to road construction projects has not been addressed by the North Dakota Supreme Court. State district courts which have addressed that question have reached conflicting conclusions. Cenex cites *Williston Ready Mix, Inc. v. United States Fidelity and Guarantee Company*, Civil No. 15,874 (N.W.D.N.D. Aug. 26, 1983), where the court denied the surety's motion for summary judgment and concluded that the applicable statute of limitations on a highway construction bond claim was that of N.D. Cent.Code § 28–01–16 (Supp.1983) rather than that of N.D.Cent.Code § 48–02–17 (1978). Reliance cites *Hanwell v. William Collins, Inc.*, Civil No. 33,277 (S.C.D.N.D. Mar. 22, 1983), where the court granted the surety's motion for summary judgment and concluded that N.D.Cent. Code § 48–02–17 applied to a claim on a bond on a road construction project. This court thus must predict how the North Dakota Supreme Court would resolve the question of wheth-

er section 48–02–17 applies to road construction projects. *See Hazen v. Pasley,* 768 F.2d 226, 228 (8th Cir.1985).

Title 48, N.D.Cent.Code, is captioned "Public Buildings." Chapter 48–01 of that title is captioned "Contractors' Bonds and Insurance," and Chapter 48–02 of that title is captioned "Construction." Section 48–01–01 provides in part:

> Every public officer or board authorized to enter into a contract for the erection, repair, or alteration of any public building *or any public improvement,* ... shall take from the contractor a good and sufficient bond for an amount equal at least to the price stated in the contract, conditioned to be void if the contractor ... shall pay all bills or claims on account of labor and materials, ... performed, furnished, and used in and about the performance of said contract, including all demands of subcontractors. Such bond shall stand as security for all such bills, claims, and demands until the same are fully paid....

(Emphasis added). This court concludes that the statute's language "any public improvement" encompasses road construction projects. Though Title 48 is entitled "Public Buildings," the language of section 48–01–01 underscored above indicates that the legislature intended Title 48 to have a broader application than its title might imply. In reaching its conclusion, this court has also considered the opinion of the North Dakota Supreme Court in *Nelson v. Hagen,* 146 N.W.2d 873 (N.D.1966), where section 48–02–17 was not at issue, but where the court found that provisions of Title 48 other than section 48–02–17 applied to road construction projects.

### Estoppel

There is no dispute that neither Cenex no Conoco commenced suit within one year after labor or materials were last supplied to Scherbenske. Therefore, unless Reliance is barred from asserting the statute of limitations against Cenex and/or Conoco, Reliance is entitled to summary judgment on the bond claims. Cenex and Conoco assert that Hudson's conduct in handling the bond claims was such as to estop Reliance from asserting that defense. They argue that Hudson's conduct was calculated to lull them into a false sense of security and so to cause them to forbear from filing suit and ultimately to cause their claims to be barred by the statute of limitations.

The North Dakota Supreme Court has apparently not interpreted the statutory provisions involved in this case. In support of their theory of estoppel, Cenex and Conoco cite several cases applying the federal Miller Act, 40 U.S.C. §§ 270a-f. While cases applying the Miller Act are useful, they are not governing law. The provisions of the Miller Act are similar to those of the North Dakota statute at issue. Federal courts interpreting the Miller Act have recognized the doctrine of equitable estoppel without requiring proof of fraud or deception and seem to have been more willing to find estoppel than has the North Dakota Supreme Court. *See, e.g., U.S. ex rel. Nelson v. Reliance Insurance Company,* 436 F.2d 1366 (10th Cir.1971); *U.S. ex rel. Humble Oil & Refining Co. v. Fidelity and Casualty Company of New York,* 402 F.2d 893 (4th Cir.1968). The North Dakota courts have analyzed equitable estoppel claims involving a statute of limitations in the same way they have analyzed equitable estoppel claims arising in other contexts. *Krueger v. St. Joseph's Hospital,* 305 N.W.2d 18, 23 (N.D.1981); *Gipson v. First National Bank of Bismarck,* 97 N.W.2d 671, 675 (N.D.1959).

In order to prevail on a claim of equitable estoppel under North Dakota law, a party must show 1). conduct which constitutes a false representation, 2). the intention to cause another person to rely on that conduct, and 3). that the party having made the false representation had knowledge of the true facts. A party claiming estoppel must have lacked knowledge of the true facts and must have relied on the false representation to his or her injury. *Farmers Cooperative Association of Churchs Ferry v. Cole,* 239 N.W.2d 808, 813 (N.D.

1976). North Dakota has codified the doctrine of estoppel:

> When a party, by his own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, he shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission.

N.D.Cent.Code § 31–11–06 (1978).

■ For purposes of Reliance's motions for summary judgment, this court must determine whether, accepting the facts as stated by Plaintiffs, Reliance is entitled to judgment as a matter of law. This court must determine whether Hudson's conduct constitutes a false representation for purposes of invoking the equitable estoppel doctrine. A false representation may be in the form of a positive false statement or in the form of suppression of facts which one party has a legal or equitable obligation to communicate to another. *Krueger*, 305 N.W.2d at 25. This court concludes that Reliance had no legal or equitable obligation to inform Plaintiffs of the existence of the one year statute of limitations. Knowledge of the existence of the statute was accessible to all parties. It is not unreasonable to expect that Plaintiffs (or legal counsel representing them at the time they initiated their attempts to collect on the bonds), having taken preliminary steps to collect on the surety bonds, would ascertain the applicable statute of limitations. Plaintiffs suggest that N.D.Cent.Code § 26.1–04–03(9) imposes on Reliance a duty to inform bond claimants of the period of the statute of limitations. This court concludes that affirmative duty is not imposed by that statute's prohibition on "knowingly misrepresenting to claimants pertinent facts of policy provisions relating to coverages at issue."

This court must next consider whether, accepting the facts as stated by Plaintiffs, Hudson's conduct constituted a false positive statement. This court concludes that, for purposes of establishing an estoppel claim, only those statements Hudson made before the end of the one year statute of limitations period are relevant. Once that period ended, Hudson's statements could have caused Plaintiffs' claims to be barred by the statute of limitations. *See U.S. ex rel. Bagnal Builders v. United States Fidelity & Guarantee Co.*, 411 F.Supp. 1333 (D.S.C.1976). Thus, in A1–83–79, this court will consider only those statements Hudson made to Tschider prior to October 9, 1982: 1). Hudson's June 8, 1982 statement that Reliance expected to be involved once Scherbenske declared default and that Reliance would make payment on the bonded projects though Hudson expected there would be allocation problems, 2). Hudson's July 2, 1982 statement that Reliance was working "super hyperactive" on the Cenex claims, and 3). Reliance's July, 1982 letters stating it was reserving its rights under the bonds. Of these statements, only the June 8, 1982 statement might be considered a false positive statement.

In A1–83–96, this court will consider only those statements Hudson made to Conoco's representatives prior to September 17, 1981 on the Mercer County project, October 10, 1982 on the Valley City project, and October 16, 1981 on the Stutsman County project. Those statements were: 1). Hudson's July 14, 1982 statement to Nigh concerning the documentation which would be required to substantiate Conoco's bond claims (Nigh Deposition at 47) and promise to mail the claim forms to Nigh, 2). Hudson's statement to Nigh in late July, 1982 that he would send the claim forms (Nigh Deposition at 49), 3). Reliance's July 28, 1982 letter stating it was reserving its rights under the bonds, and 4). Hudson's statement to Ronne and Spears on October 13, 1982 acknowledging that Reliance had received the completed claim forms, was investigating them, and would contact Conoco again after the investigation was completed. (Ronne Deposition at 66; Spears Deposition at 16; Conoco's Answer to Reliance's Interrogatory # 10). Of Hudson's statements, only the last might possibly be considered a false representation. That statement could be considered only on Conoco's claim on the Stutsman County project, because it occurred after the one

year period had expired on the Mercer County and Valley City projects. Insofar as the Mercer County and Valley· City projects are concerned, Conoco's claim on the surety bond is barred by N.D.Cent. Code § 48–02–17 (1978).

This court's analysis concerning Cenex's claims and Conoco's claim on the Stutsman County project is guided by that of the North Dakota Supreme Court in *Gipson*, 97 N.W.2d at 671. In that case, a bank depositor sought to recover from a bank for allegedly forged checks negligently debited to his checking account. As a defense, the bank asserted that the depositor had not complied with a statutory requirement that the depositor give the bank written notice of the claim within ninety days after the end of the month in which the check was paid. Plaintiff argued the bank was estopped from asserting the defense. The facts on which Plaintiff's estoppel theory was based were summarized as follows:

> According to the testimony of the plaintiff, shortly after he discovered the forgeries for which settlement was made he had several conversations with the vice-president of the defendant bank who told him that the bank would not pay unless the checks were produced. The plaintiff further testified that in a later conversation had during the early part of May, 1954 the vice-president, in the presence of plaintiff's attorney, said:
>
>> 'that if I could produce the checks the Bank would pay, otherwise it wouldn't.'
>
> The plaintiff predicates waiver or estoppel on these conversations and the promise of the vice-president that the bank would pay if the checks were produced. It is argued that because of these conversations and the promise to pay the checks if they were produced the plaintiff was induced to forego giving the notice required by the statute, that it was the duty of the bank officer to advise the plaintiff of the necessity of giving such notice and that the bank is estopped by reason of the silence of its officer in this respect. The checks were never produced. In their absence it is clear that there was no waiver of the statute. There is no indication from the conversations with the vice-president that he intended to relinquish or forbear the enforcement of any right which the bank had in the absence of the production of the checks. Clearly there was no waiver. Neither did the conduct of the vice-president amount to an estoppel. There is no evidence to indicate that the conversations in any way contributed to the failure of the plaintiff to give the notice prescribed by statute. According to the plaintiff's own testimony he was told that the bank would not pay if he did not produce the checks that he claimed were forged. There was no concealment on the part of the bank officer of any fact pertinent to the controversy. Neither was there a failure of performance of any duty on his part.

97 N.W.2d at 676. Concluding the bank's conduct was insufficient to establish an estoppel claim, the court reversed a judgment for the plaintiff, and ordered that judgment be entered for the defendant.

■ This court concludes that, as a matter of law, the evidence of Hudson's conduct cannot establish Plaintiff's claim of estoppel. At most, Reliance stated that it expected to be involved on the bond claims once Scherbenske declared default, and that it would make payment if the claims were proved to its satisfaction. Even if Reliance was, as Plaintiffs assert, demanding extraordinary documentation of the claims, the only promise it made was contingent on Plaintiffs supplying the documentation demanded. These statements cannot be considered a false representation. This court concludes that Reliance is entitled to judgment as a matter of law on Plaintiffs' bond claims.

### Tort Claim

In addition to their claims under the surety bonds, both Cenex and Conoco seek to recover under a tort theory. They assert Reliance acted in bad faith and with a

lack of fair dealing in handling their bond claims, that Reliance has a general business practice of handling similar claims in a similar manner, and that Reliance's conduct proximately caused damages to Plaintiffs. They assert that Reliance has a duty, arising under North Dakota's statute on insurance claims settlement practices, to handle claims fairly. That statute provides in part:

A person may not engage in this state in any trade practice defined in this chapter as ... an unfair or deceptive act or practice in the business of insurance.

N.D.Cent.Code § 26.1–04–02 (Supp.1983).

The following are unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:

\* \* \* \* \* \*

Unfair claim settlement practices. Committing any of the following acts, if done without just cause and if performed with a frequency indicating a general business practice:

a. Knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue.

b. Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under insurance policies.

c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.

d. Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear.

N.D.Cent.Code § 26.1–04–03(9) (Supp.1983).

Again, this court must deal with an issue of state law which has not yet been decided by the North Dakota Supreme Court. A review of the available legislative history has provided no useful information. Chapter 26.1–04 does not, by its express terms, recognize a duty giving rise to an action for damages to one who is injured by an insurer's unfair claim settlement practices. Plaintiffs cite a single decision of a state district court which apparently recognized a private cause of action under that chapter. *Weber v. Horace Mann Insurance Co.*, Civil No. 13684 (S.C.D.N.D. May 27, 1982).

■ This court concludes that the duties imposed by Chapter 26.1–04 may be the basis for an action sounding in tort. It is apparent from the provisions of that chapter that the statute was enacted to protect persons filing claims against insurers. *See R.B.J. Apartments, Inc. v. Gate City Savings & Loan Ass'n*, 315 N.W.2d 284, 287 (N.D.1982); *Hennenfent v. Flath*, 66 N.W.2d 533, 536 (N.D.1954). As bond claimants, Cenex and Conoco come within that protected class, for the purpose of a surety bond is to protect those parties supplying materials or labor to a contractor. Cenex and Conoco are such parties. The statute prohibits all persons from engaging in unfair practices in the business of insurance. N.D.Cent.Code § 26.1–04–02 (Supp. 1983). Reliance, being authorized by the North Dakota Commissioner of Insurance to transact insurance and bonding business within the state, surely comes within that broad definition.

■ Having recognized a duty not to engage in unfair insurance claim settlement practices as defined by the statute, this court concludes genuine issues of the fact of Reliance's breach of that duty preclude summary judgment on the tort claims.

### CONOCO'S MOTION

Having concluded that the bond claims are barred by the statute of limitations, it is not necessary that this court address Conoco's motion for partial summary judgment.

### CONCLUSION

For the foregoing reasons, IT IS ORDERED:

1). In Civil No. A1–83–79, Defendant Reliance Insurance Company is granted summary judgment dismissing Plaintiff's claim for collection on surety bonds.

The motion for summary judgment is, in all other respects, denied.

2). In Civil No. A1–83–96, Defendant Reliance Insurance Company is granted summary judgment dismissing Plaintiff's claim for collection on surety bonds. Defendant's motion for summary judgment is, in all other respects, denied.

3). In Civil No. A1–83–96, Plaintiff Conoco, Inc.'s motion for partial summary judgment is dismissed as moot.